The STATE of Ohio, Appellee,

v.

HOHENBERGER, Appellant.

[Cite as *State v. Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–10–17.

Decided Aug. 27, 2010.

Paul A. Dobson, Wood County Prosecuting Attorney, for appellee.

Jerome Phillips, for appellant.

---

ROGERS, Judge.

{¶ 1} Defendant-appellant, Reggie H. Hohenberger, appeals the judgment of the Court of Common Pleas of Wood County convicting him of vehicular assault. On appeal, Hohenberger argues that the trial court erred in denying his motion to dismiss the charge of vehicular assault for failure to provide a speedy trial; that the trial court erred in allowing the state to dismiss the only African-American juror without a race-neutral reason; that the trial court erred in denying his motion for a mistrial after two witnesses gave improper opinion testimony; and that the trial court erred in convicting him of vehicular assault when he was originally indicted for aggravated vehicular assault. Based upon the following, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

{¶ 2} In September 2008, Hohenberger was indicted for Count One: aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), a felony of the third degree; Count Two: failing to stop after an accident involving injury to persons or property in violation of R.C. 4549.021, a felony of the fifth degree; and Count Three: domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The indictment stemmed from an incident in May 2008 during which Hohenberger allegedly argued with his wife, Kathleen Hohenberger, at a bar, struck her in the face, drove off in his SUV, returned to the bar parking lot, drove over a concrete curb, struck Kathleen with the SUV, and then drove off again.

{¶ 3} On September 16, 2008, Hohenberger filed a request for discovery.

{¶ 4} On September 18, 2008, Hohenberger waived the statutory time limitations "to the conclusion of this case."

{¶ 5} On September 19, 2008, Hohenberger entered pleas of not guilty to all counts in the indictment. Additionally, the trial court's entry ordered that "[d]iscovery is to be completed following the request by opposing counsel within fourteen (14) days if Defendant is not incarcerated."

{¶ 6} On November 12, 2008, the state responded to Hohenberger's discovery request.

{¶ 7} On February 12, 2009, Hohenberger moved the trial court to reschedule the trial date of April 8, 2009, due to his desire to obtain an expert witness for accident-reconstruction purposes, and the trial court granted the motion on February 27, 2009. The trial court thereafter set a new trial date of September 16, 2009.

{¶ 8} On September 14, 2009, the state filed a motion to continue the trial date because the state had been unaware that an accident-reconstruction report was being prepared until September 11, 2009, just days before trial. On September 17, 2009, the trial court granted the state's motion and set a new trial date of October 21, 2009. On the same day, Hohenberger was indicted for vehicular assault in violation of R.C. 2903.08(A)(2)(b),[1] a felony of the fourth degree.

{¶ 9} On October 6, 2009, Hohenberger entered a plea of not guilty to the new count of vehicular assault. Several days later, on October 9, 2009, the state filed a motion to dismiss Count One, aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), in light of the fact that in November 2008, Hohenberger had entered a plea in Perrysburg Municipal Court of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19. The state asserted that dismissal was necessary because under *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, jeopardy would attach as to the aggravated-vehicular-assault charge and bar prosecution.

{¶ 10} Shortly thereafter, on October 19, 2009, Hohenberger filed a motion to dismiss the newly indicted charge of vehicular assault in violation of R.C. 2903.08(A)(2)(b), claiming that his speedy-trial rights had been violated. On October 21, 2009, the trial court denied Hohenberger's motion to dismiss, finding that he would be brought to trial within the statutory period. Additionally, the trial court stated that in lieu of dismissing the first charge of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), it would grant the state's

---

1. The indictment and jury form both refer to "aggravated vehicular assault" under R.C. 2903.08(A)(2)(b); however, R.C. 2903.08(C)(1) provides that a violation of R.C. 2903.08(A)(2) constitutes vehicular assault, not aggravated vehicular assault. Nevertheless, this error does not affect our disposition.

oral motion to *amend* the first indictment to reflect the language of the new charge of vehicular assault in violation of R.C. 2903.08(A)(2)(b).

{¶ 11} Thereafter, on October 21, 2009, the case proceeded to trial, at which the following testimony was heard.

{¶ 12} Kathleen Hohenberger testified that she had been married to Reggie Hohenberger for 28 years; that on Sunday, May 18, 2008, she and Hohenberger went out to celebrate the anniversary of their first date, driving their Lincoln Navigator SUV; that at approximately 7:00 p.m., they went to the Village Idiot Bar in Maumee, Ohio, for dinner; that she believed she had consumed four beers at the Village Idiot and was unsure how many beverages Hohenberger had consumed; that Hohenberger had struck up a conversation with several men in town on business; that the couple had left the Village Idiot and Hohenberger had offered three of the men a ride to another bar, Jed's; that the couple had consumed more alcoholic beverages at Jed's; that the couple and the three men went to another bar, Quarters, located in Wood County, at approximately 10:00 p.m.; that she had consumed a beer while Hohenberger had played pool with the men; that she had begun to feel ill and had gone into the restroom; that she did not remember a man being in the restroom with her; that she could not remember how long she had been in the restroom; that her lack of recollection had been not unusual because she was intoxicated; that the next thing she remembered was walking out the front door of Quarters; that she did not recall seeing Hohenberger or hearing him say anything prior to her walking out the door; that she had realized that their SUV was not in the parking lot, so she decided to walk home because she and Hohenberger did not live far from Quarters; that she then saw the SUV. She said, "He came in fast and I stopped, raised my hand and then that was that"; that she did not remember much after the accident except someone picking up her head and kissing her on the forehead; that she remembered being transported in an ambulance; and that as a result of the incident, she had sustained a fractured femur requiring placement of a rod, a scratched lip, bruising to her forehead and chin, and a scrape near her eye.

{¶ 13} On cross-examination, Kathleen testified that she knew that Hohenberger was the person driving the SUV when it struck her because "[w]ho else would kiss [her] on [her] forehead"; that she later learned that her blood-alcohol level had been .26 on the evening of the incident; that she did not believe she had ever consumed so much alcohol; and that Reggie had never struck her during their entire relationship.

{¶ 14} Mackenzie Reyes testified that she had been 15 years old at the time of trial; that on May 18, 2008, she had gone to Quarters with her mother, Bernadette Reyes–Pickett, and a family friend, John Lohmeyer; that eventually, she had gone into the restroom; that while sitting in a stall, she had seen four

feet in the stall next to her and had realized that there were two people in it; that she could see a pair of large feet and a pair of small feet facing each other; that she had realized that probably a man and a woman were together in the stall; that she was scared and waited several minutes, trying not to make any noise until the other people left; that she had then left the restroom quickly; that her mother had asked her what was wrong, and she told her mother what she had seen; that they had then looked over and had seen someone run down the street; that someone came in the door and said "call the ambulance" and "she got hit"; that she and her mother had gone outside, and she had seen someone lying near the sidewalk in a puddle of blood; that her mother had pushed her back inside Quarters; and that she had not actually seen anyone get hit and had not seen who was running outside.

{¶ 15} Bernadette Reyes–Pickett testified that on May 18, 2008, she had gone with her daughter, Mackenzie, some co-workers, and Lohmeyer to Quarters; that she had noticed some men playing pool and a woman who appeared intoxicated and was being very "social" and "bebopping around"; that Mackenzie had gone to the restroom; that when Mackenzie had returned from the restroom, she had had a strange look on her face; that near the restrooms, she had seen "a man walking by real [sic] fast" and "a woman coming out after him, chasing after him"; that the woman had been "trying to put herself back to [sic] together * * * trying to * * * put her clothes neatly back on * * * trying to pull her pants up and put her, cover herself more"; that the woman's breasts had been exposed; that the man had screamed at the woman, had called her a "slut," and had gone out the door of the bar; that it had appeared that the man was trying to get away from the woman; that soon after, someone had come into the bar and had said "he hit her"; that she had run outside, and the woman had been lying on the pavement in the parking lot; that she had not seen a black SUV in the area; that the woman had been "twisted on her side" and had been "moaning and hurting"; that she had not seen a big pool of blood, but that the woman had appeared to be injured; and that she had not actually seen the incident.

{¶ 16} Lohmeyer testified that on May 18, 2008, he had gone to Quarters with Bernadette and Mackenzie; that he had gone outside to smoke; that Hohenberger had come out the door first and had begun walking toward his vehicle, and Kathleen had followed, trying to persuade him to stop; that he had heard them arguing; that Hohenberger had called Kathleen a "slut" and had told her to "stay away"; that she had grabbed Hohenberger's arm and he had turned around and had struck her in the face; that she had fallen to the ground; that he and another bar patron had gone over to Kathleen to make sure she was okay and help her up; that Kathleen had been intoxicated and had been slurring her speech; that Hohenberger had continued to his vehicle and "took off"; that

Kathleen "took off and had gone chasing after [Hohenberger]"; that they lost sight of her when she went around the corner of the building, and shortly thereafter, they had heard a screech "like somebody jumped the curb and * * * tires trying to stop"; that they had heard a "thump" like someone hitting a vehicle; that he and another patron had run over to see what had happened; that Kathleen had been on the ground to the left of the vehicle; and that Hohenberger had gotten out of the vehicle and then had gotten back in and had left her lying on the pavement.

{¶ 17} Kelly Santus testified that she had worked at Quarters in May 2008; that on May 18, 2008, after her shift had ended, she had sat at the bar and had drunk a beer; that she had observed a few customers go into the restroom area; that shortly thereafter, one customer had begun walking toward the front door, and a female customer had begun running after him, yelling "wait"; that the man had been "storming out the front door"; that the woman had been was "fixing herself" by "fidgeting with her top"; that she did not remember exactly what the man had said to the woman, but he had sounded angry and had said something along the lines of "whore" or "slut"; that the two customers had gone outside; that someone had made a comment that "he hit her" or "he pushed her" and then had stated "call 911, he just hit her with his car"; that she had gone outside and had seen the man "taking off in his vehicle," and the woman had been lying on the parking lot around the corner of the building; that she had not actually seen the accident; that the woman had been wearing all black clothing; and that the parking lot had been poorly illuminated, and it had been a dark night.

{¶ 18} Darla Huffman testified that she had been a customer at Quarters on the evening of the incident; that she had heard a "boom" in the parking lot and had observed Kathleen lying on the ground and Hohenberger trying to pick her up; that two men had stopped Hohenberger and had told him to leave her alone; that Hohenberger had gotten back into his SUV and had departed; that she had run back into Quarters to give the staff Hohenberger's license plate number; that she had not seen Hohenberger slap or strike Kathleen; and that Kathleen had appeared highly intoxicated.

{¶ 19} At the beginning of the second day of trial, the state renewed its motion to dismiss the amended charge of vehicular assault in the original indictment and to proceed on the newly indicted vehicular-assault charge, which the trial court granted. Thereafter, the state continued with its presentation of evidence.

{¶ 20} Noelle Walker testified that she had been a registered nurse at St. Luke's Hospital in May 2008; that Kathleen had been admitted to the emergency room on May 18, 2008; that the emergency medical technicians had stated that Kathleen had been hit by an SUV in a parking lot; that Kathleen had had bruising to her chin, cheek, eye, lip, ear, shoulder, wrist, ankle, and both hands;

that she had had a bony deformity in her left thigh and femur; that her femur had appeared to be broken; that her blood alcohol level had been .261; and that Kathleen had never stated that she had been attacked by Hohenberger.

{¶ 21} Dr. Benjamin Salpietro testified that he is an orthopedic surgeon; that, on May 19, 2008, he had examined Kathleen and had determined that she had had a fractured femur; that the femur is the strongest bone in the body; that he had placed a rod into the femur to hold in into place as it healed; that treatment had required not only surgery, but rehabilitation for approximately ten to 12 weeks; that a femur fracture is a very painful injury; that a femur fracture could be consistent with being struck by a vehicle; that he knew both Kathleen and Hohenberger socially; and that he was aware that Hohenberger has poor eyesight in one eye.

{¶ 22} Patrolman Brenton Duran of the Perrysburg Police Department testified that in the early morning of May 19, 2008, he had been called to Quarters in response to a report that an SUV had struck a woman in the parking lot; that the license-plate number provided by a witness had led him to a Lincoln Navigator parked in the driveway of Hohenberger's home; that the SUV had had a flat tire and blood on the hood; that there had been a scuff mark on the vehicle as if it had struck a curb; and that the officers had eventually located Hohenberger walking down the road.

{¶ 23} Officer Charles Moffitt of the Perrysburg Police Department testified that he had been dispatched to Quarters regarding the incident; that he had located Kathleen lying on the ground; that Kathleen had appeared to be injured and had some facial scrapes; that a curb near the parking lot had been broken and scuffed with rubber tire marks; that the parking lot area had been fairly dark; that a vehicle would have had to have been moving at a high rate of speed to break a concrete curb; and that a driver's act of driving too fast and being unprepared for a turn would be "unsafe" and "possibly reckless." Hohenberger objected to Officer Moffitt's statement characterizing his driving as "possibly reckless," and the trial court sustained the objection.

{¶ 24} Detective Doug Kinder of the Perrysburg Police Department testified that after examining the scene of the incident, he determined that whoever had made the turn in the vehicle had been turning so aggressively and sharply, and with such speed, that the tire had left a "yaw mark" on the asphalt; that fingerprints and a handprint on the driver's side of the hood indicated that the victim's hand had been in the middle left side of the hood and had gone across toward the right side of the vehicle; that the marks on the hood had been consistent with someone being struck by the left front part of the vehicle; that there had been a blood smear on the right side of the vehicle hood; that the blood marks indicated that the victim had been struck by the left side of the vehicle and

had then come off to the right side; that DNA analysis revealed that the blood was Kathleen's; that Hohenberger had reported having blindness in his right eye; that Hohenberger's blood alcohol level had been .16, twice the legal limit of .08; that alcohol impairs a driver's ability to make judgments and control a vehicle safely; and that in his opinion, "driving up on a curb with sufficient force to break the curb" is "reckless." Hohenberger objected to Detective Kinder's statement characterizing his driving as "reckless," and the trial court sustained the objection. Additionally, Hohenberger moved for a mistrial on the same basis, and the trial court denied the motion.

{¶ 25} Thereafter, the state rested, and Hohenberger made a Crim.R. 29 motion as to all three counts, including Count Two, failing to stop after an accident involving injury to persons or property in violation of R.C. 4549.021. The court overruled the motion as to Counts One and Three, but sustained the motion as to Count Two. Thereafter, Hohenberger presented the following testimony on his behalf.

{¶ 26} Brian Tanner, an expert in accident reconstruction, testified that he had reconstructed the path of the SUV in the parking lot; that he believed that the average speed of the vehicle would have been 25 to 30 m.p.h. when it had initially struck the curb; that the vehicle had been traveling approximately 15 m.p.h. at the time of impact with Kathleen; that based on the location of the blood on the vehicle and Kathleen's injuries, he believed that she had been walking across the front of the vehicle from the left side to the right side, and that her right side had been facing the vehicle prior to impact; that just prior to impact, she had stopped, turned, and faced the vehicle; that her face had contacted the hood, and she had spun off the front of the vehicle to the right or passenger side; that considering the lighting in the parking lot and time of night, he believed that the vehicle headlights would not have illuminated Kathleen as she walked across the parking lot until one second prior to impact; and that at that same time, he believed that Hohenberger would also have been reacting to the jarring impact of traversing the curb.

{¶ 27} Thereafter, Sergeant Christopher Kinn testified on behalf of the state that he is a crash reconstructionist for the Ohio State Highway Patrol; that based on all the evidence he reviewed, the headlights of the SUV would have illuminated someone in Kathleen's location; that he believed Hohenberger had driven the SUV into the parking lot and had struck Kathleen with the left front corner and that Kathleen had slid across the hood, banging her head as she came across the right side; and that no DNA testing was conducted on the handprints on the vehicle, so he could not be certain that they were Kathleen's.

{¶ 28} On October 23, 2009, the jury found Hohenberger guilty of vehicular assault in violation of R.C. 2903.08(A)(2)(b) and domestic violence. In March

2010, the trial court ordered Hohenberger to serve a three-year lump term of community control, imposed a one-year license suspension, and ordered him to pay a $5,000 fine.

{¶ 29} In April 2010, the trial court issued a second nunc pro tunc order[2] amending its October 26, 2009 entry to reflect that at the beginning of the second day of trial, the state **"renewed its motion to dismiss the amended Count I in Case No. 2008–CR–0306 and to proceed on the newly indicted charge in Case No. 2009–CR–0450. The Court granted the motion"** and **"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Amended Count I in Case No. 2008–CR–0306 be, and hereby is, dismissed."** (Boldface sic.).

{¶ 30} It is from his convictions and sentences that Hohenberger appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial court erred in denying the appellant's motion to dismiss the charge of aggravated vehicular assault for failure to provide a speedy trial pursuant to R.C. 2945.71(C)(2).

### Assignment of Error No. II

The trial court erred in allowing the state, over the appellant's objection, to dismiss the only African–American juror without giving a race-neutral reason.

### Assignment of Error No. III

The trial court erred in denying the appellant's motion for a mistrial after a witness for the state gave improper opinion testimony.

### Assignment of Error No. IV

The trial court erred in convicting the defendant of vehicular assault when he was indicted for aggravated vehicular assault.

{¶ 31} Due to the nature of Hohenberger's arguments, we elect to address his second, third, and fourth assignments of error together.

### Assignment of Error No. I

{¶ 32} In his first assignment of error, Hohenberger contends that the trial court erred when it denied his motion to dismiss the charge of vehicular assault for failure to provide a speedy trial pursuant to R.C. 2945.71(C)(2). Specifically, Hohenberger argues that it was unreasonable for the state to take 57 days to

---

2.  The first nunc pro tunc order contained erroneous case numbers.

respond to his motion for discovery when the trial court ordered the state to respond within 14 days and the discovery consisted of only a witness list and a single set of documents already in the state's possession; and that it was unreasonable for the state to be granted a continuance of the trial date on the grounds that it had just recently been provided with a courtesy copy of an expert's report that was not even introduced at trial. Further, Hohenberger contends that if his trial on the vehicular-assault count was improper due to a speedy-trial violation, his domestic-violence conviction should be reversed and remanded for a new trial. Specifically, Hohenberger argues that the extensive testimony presented about the vehicular assault was unfairly prejudicial, confused the issues, and misled the jury concerning the domestic-violence count pursuant to Evid.R. 403(A).

{¶ 33} "Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq." *State v. King*, 3d Dist. No. 9–06–18, 2007-Ohio-335, 2007 WL 209990, ¶ 30, citing *State v. DePue* (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745. If any ambiguity exists, this court will construe the record in the defendant's favor. *King*, 2007-Ohio-335, 2007 WL 209990, at ¶ 30, citing *State v. Mays* (1996), 108 Ohio App.3d 598, 609, 671 N.E.2d 553.

{¶ 34} "Both the United States and Ohio Constitutions guarantee a criminal defendant the right to a speedy trial." *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, ¶ 9, citing *State v. Baker* (1997), 78 Ohio St.3d 108, 110, 676 N.E.2d 883. In addition, Ohio statutes set forth specific time requirements necessary for compliance with the speedy-trial guarantee. The applicable statutory speedy-trial provision, R.C. 2945.71(C)(2), provides, "A person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest."

{¶ 35} Additionally, R.C. 2945.73(B) provides, "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Both R.C. 2945.71 and 2945.73 are mandatory, and strict compliance is required by the state. *King*, 2007-Ohio-335, 2007 WL 209990, at ¶ 32, citing *State v. Pudlock* (1975), 44 Ohio St.2d 104, 105, 73 O.O.2d 357, 338 N.E.2d 524. "Therefore, when a criminal defendant shows that he was not brought to trial within the proper period, the burden shifts to the State to demonstrate that sufficient time was tolled or extended under the statute." *State v. Maisch*, 173 Ohio App.3d 724, 2007-Ohio-6230, 880 N.E.2d 153, ¶ 24, citing *Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, at ¶ 10, citing *State v. Butcher* (1986), 27 Ohio St.3d 28, 31, 27 OBR 445, 500 N.E.2d 1368.

{¶ 36} The statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period. *Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, at ¶ 12, citing *State v. Stewart* (1998), 12th Dist. No. CA98–03–021, 1998 WL 640909. Additionally, the triple-count statute, R.C. 2945.71(E), provides that, for computation purposes, each day an accused spends in jail in lieu of bond on the pending charge shall count as three days. *State v. Euton*, 3d Dist. No. 2–06–35, 2007-Ohio-6704, 2007 WL 4374293, ¶ 24. Time extensions are permitted in limited circumstances under R.C. 2945.72, including periods of delay "necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E).

{¶ 37} Here, Hohenberger was arrested on May 19, 2008, and was brought to trial on October 21, 2009. Thus, excluding the day of his arrest, 519 days elapsed. As Hohenberger consequently demonstrated that he was not brought to trial within the 270–day period, the burden shifts to the state to demonstrate that a sufficient amount of time was tolled under the statute. See *Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, at ¶ 10.

{¶ 38} Upon Hohenberger's motion to dismiss the vehicular-assault count for speedy trial purposes, the trial court analyzed the issue and found that the speedy-trial period was tolled as follows:

| Dates | Events | Days Attributed to Defendant |
| --- | --- | --- |
| 9-14-08— 11-12-08 | Defendant files request for discovery and executes time waiver (on 9-18-08) until state responds to discovery request | 57 |
| 2-12-09— 9-16-09 | Defendant's motion to continue trial (rescheduled for 9-16-09) | 161 |
| 9-16-09— 10-21-09 | State's motion to continue trial (rescheduled for 10-21-09) | 34 |
| | TOTAL DAYS TOLLED | 252 |

{¶ 39} Accordingly, because 252 days of the 519–day time period that elapsed were tolled and attributed to Hohenberger, the trial court determined that only 267 days of the applicable 270-day speedy-trial period had elapsed, and, thus, that Hohenberger had been brought to trial within an appropriate time.

{¶ 40} On appeal, Hohenberger disputes the trial court's calculations of the tolled days, specifically arguing that (1) the 57–day time period tolled from the date of his request for discovery until the state's response was unreasonable because the trial court had ordered the state to respond to the request within 14 days, and (2) the 34–day time period should have been charged to the state because the state requested a continuance of the trial date. The state responds that the trial court's calculations were correct because (1) its 57–day response

time to Hohenberger's request for discovery was reasonable due to a lengthy witness list and large amount of medical records, and (2) its request for a continuance of the trial date was due to Hohenberger's unexpected production of an accident-reconstruction report just days before trial. Alternately, the state argues that Hohenberger waived his speedy-trial rights on September 18, 2008, and that this waiver applied to the September 17, 2009 amendment of the indictment to vehicular assault.

{¶ 41} Initially, we address the state's argument that Hohenberger's speedy-trial rights were not violated because he signed a speedy-trial waiver on September 18, 2008. The Supreme Court of Ohio has held that "the accused may waive his constitutional right to a speedy trial, provided such waiver is knowingly and voluntarily made." *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218, citing *Barker v. Wingo* (1972), 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101. However, in situations where an accused waives his right to speedy trial as to an initial charge, the waiver does not apply to "a subsequently filed charge which arises out of the same facts as the former charge, when the later charge is brought after a nolle prosequi is entered as to the first charge." *State v. Adams* (1989), 43 Ohio St.3d 67, 68, 538 N.E.2d 1025. The only situation in which courts have found that a waiver will carry over to a subsequently filed charge is when the subsequent charge is a lesser included offense of an initial charge, or when the initial indictment was defective in that it was missing an element, such as mens rea. See *State v. Davis,* 2d Dist. No. 2002–CA–43, 2003-Ohio-4839, 2003 WL 22110297, ¶ 32; *State v. Dobbins,* 9th Dist. No. 08CA009498, 2009-Ohio-2079, 2009 WL 1175650, ¶ 15–17.

{¶ 42} Here, Hohenberger was initially indicted for aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), and was subsequently indicted for vehicular assault in violation of R.C. 2903.08(A)(2)(b). It is undisputed that both charges arose out of the same facts and that, at trial, the first charge was dismissed. See *Adams,* 43 Ohio St.3d 67, 538 N.E.2d 1025. Thus, whether the waiver carried over to the second charge will depend on whether vehicular assault is a lesser included offense of aggravated vehicular assault.

{¶ 43} In *State v. Deem* (1988), 40 Ohio St.3d 205, 210, 533 N.E.2d 294, the Supreme Court of Ohio determined the applicable standard for determining when an offense is a lesser included offense of another offense. The *Deem* standard provides:

> An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.

40 Ohio St.3d at 209, 533 N.E.2d 294. Additionally, in *State v. Barnes* (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240, the Supreme Court clarified that "the second prong of the *Deem* test requires us to examine the offenses at issue *as statutorily defined* and not with reference to specific factual scenarios." (Emphasis sic.)

{¶ 44} Applying the *Deem* test to the case sub judice, we note that R.C. 2903.08(A)(1)(a) governs aggravated vehicular assault and provides that "[n]o person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways: (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance * * *." Courts have previously held that R.C. 2903.08(A)(1)(a) is a strict-liability offense. See *State v. Gagnon*, 6th Dist. No. L–08–1235, 2009-Ohio-5185, 2009 WL 3132913, ¶ 17, citing *State v. Hundley*, 1st Dist. No. C–060374, 2007-Ohio-3556, 2007 WL 2019804, overruled on other grounds by *State v. Moore*, 1st Dist. No. C–070421, 2008-Ohio-4116, 2008 WL 3544342; *State v. Mayl*, 154 Ohio App.3d 717, 2003-Ohio-5097, 798 N.E.2d 1101; *State v. Griesheimer*, 10th Dist. No. 05AP–1039, 2007-Ohio-837, 2007 WL 612509; and *State v. Harding*, 2d Dist. No. 20801, 2006-Ohio-481, 2006 WL 267323; see also *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 65–70.

{¶ 45} On the other hand, R.C. 2903.08(A)(2)(b) governs vehicular assault and provides, "No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways: * * * (2) In one of the following ways: * * * (b) Recklessly."

{¶ 46} The Second Appellate District, in analyzing both R.C. 2903.08(A)(1)(a) and (A)(2)(b), acknowledged that some of the elements of aggravated vehicular assault and vehicular assault are identical. *Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, at ¶ 65. However, the court pointed out that vehicular assault requires an additional element of recklessness, whereas aggravated vehicular assault requires that the defendant be under the influence of alcohol and/or a drug of abuse and is a strict-liability offense. Id. Additionally, the court concluded that "an individual can be reckless without being under the influence of alcohol" and that "an individual can be under the influence of alcohol without being reckless." Id. at ¶ 66–68. We agree with the Second Appellate District. Because an individual could possibly commit an offense under R.C. 2903.08(A)(1)(a) without necessarily committing an offense under R.C. 2903.08(A)(2)(b), vehicular assault is not a lesser included offense of aggravated vehicular assault. Consequently, we find that as Hohenberger would not have contemplated the element of recklessness at the time he signed the speedy-trial

waiver in conjunction with the aggravated-vehicular-assault charge, the waiver did not carry over to the vehicular-assault charge.

{¶ 47} Next, we turn to Hohenberger's argument that the 34–day time period should have been charged to the state because the state requested a continuance of the trial date. Courts have held that when a defendant requests a continuance, "the speedy trial clock is tolled from the point at which the defendant requests the continuance." *State v. Smith*, 2d Dist. No. 2003 CA 93, 2004-Ohio-6062, 2004 WL 2588269, ¶ 24, citing *State v. Stamps* (1998), 127 Ohio App.3d 219, 226–227, 712 N.E.2d 762. Additionally, when it is the state that requests the continuance, or it is sua sponte ordered by the court, "the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *Stamps*, 127 Ohio App.3d at 224, 712 N.E.2d 762, citing *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, syllabus; *State v. Clements*, 12th Dist. No. CA90–04–33, 1990 WL 210809. When a continuance granted to the state or sua sponte is not supported by an explanation, courts have held that the time must be charged to the state for speedy-trial purposes. *State v. Garries*, 2d Dist. No. 19825, 2003-Ohio-6895, 2003 WL 22973460, ¶ 16–18, citing *Stamps*.

{¶ 48} Here, the trial court's September 17, 2009 order granting the state's motion to continue provides no explanation for the continuance. Although the state argues that the trial court's reasoning is apparent in its October 21, 2009 orders on the motion to dismiss (finding that the delay should be charged to Hohenberger since the state's continuance was requested because he had failed to provide an accident-reconstruction report until just days before trial), we note that the journal entry providing a reason for the continuance was not issued until *after* expiration of the speedy-trial period. As the September 17, 2009 continuance was unsupported by any explanation, we must charge the 34–day time period to the state for speedy-trial purposes. See *Garries*, 2003-Ohio-6895, 2003 WL 22973460, at ¶ 16–18.

{¶ 49} We decline to discuss Hohenberger's first argument that the 57–day time period tolled from the date of his request for discovery until the state's response was unreasonable, as our finding regarding his second argument within the first assignment of error is dispositive of the speedy-trial issue. Charging the 34 day time period to the state, we find that only 218 days of the 519–day period between arrest and trial were tolled. Accordingly, 301 days passed that were not tolled, in excess of the 270–day statutory time period. Thus, the trial court erred in overruling Hohenberger's motion to dismiss the vehicular-assault charge.

{¶ 50} Next, we turn to Hohenberger's argument that his domestic-violence conviction should be reversed and remanded for a new trial due to the extensive testimony presented about the vehicular assault, which, he argues, was unfairly prejudicial, confused the issues, and misled the jury under Evid.R. 403(A). We agree.

{¶ 51} Evid.R. 403(A) governs mandatory exclusion of evidence and provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." At the trial sub judice, extensive testimony was heard regarding Hohenberger's alleged act of striking Kathleen with his SUV, as well as Kathleen's severe injuries from the incident. Because the acts that were alleged as the basis of the domestic-violence charge preceded the acts alleged as vehicular assault, we find that any probative value of the evidence regarding the vehicular-assault charge was substantially outweighed by the danger that this evidence unfairly prejudiced Hohenberger, confused the issues, or misled the jury regarding the domestic-violence charge.

{¶ 52} Accordingly, we sustain Hohenberger's first assignment of error, reverse his conviction for vehicular assault, reverse his conviction for domestic violence, and remand for a new trial on the domestic-violence charge.

### Assignments of Error Nos. II, III, and IV

{¶ 53} In his second assignment of error, Hohenberger contends that the trial court erred in allowing the state to dismiss the only African–American juror without offering a race-neutral reason. In his third assignment of error, Hohenberger contends that the trial court erred in denying his motion for a mistrial after a witness for the state gave improper opinion testimony. In his fourth assignment of error, Hohenberger contends that the trial court erred in convicting him of vehicular assault when he was indicted for aggravated vehicular assault.

{¶ 54} Our disposition of Hohenberger's first assignment of error renders his second, third, and fourth assignments of error moot, and we decline to address them. See App.R. 12(A)(1)(c).

{¶ 55} Having found error prejudicial to the appellant herein in the particulars assigned and argued in the first assignment of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WILLAMOWSKI, P.J. and PRESTON, J., concur.

JOHN R. WILLAMOWSKI, RICHARD M. ROGERS, and VERNON L. PRESTON, JJ., of the Third District Court of Appeals, sitting by assignment.