[Cite as *State v. Swiger*, 2013-Ohio-3519.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26556 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MELISSA SWIGER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 11 11 3032 |

DECISION AND JOURNAL ENTRY

Dated: August 14, 2013

WHITMORE, Judge.

{¶1}     Defendant-Appellant, Melissa Swiger, appeals from her convictions in the Summit County Court of Common Pleas.  This Court reverses.

I

{¶2}     On the morning of August 23, 2011, Swiger stopped her minivan in the middle of Waterloo Road, exited the minivan, and opened the driver's side rear passenger door.  She then removed her three-year old son from the minivan, placed him in the middle of the four-lane road, returned to the driver's seat, and drove off.  A woman who resided on Waterloo Road saw Swiger place her son in the middle of the road and ran into traffic to rescue him.

{¶3}     Subsequently, Swiger drove through the intersection of Waterloo Road and South Main Street at an excessive rate of speed.  Her minivan collided with two other vehicles.  The collision seriously injured one of the other drivers involved, but Swiger only received minor injuries.  After her minivan came to a stop, Swiger got out and began to walk down the middle of

South Main Street. Officers arrested her on foot on South Main Street. At the time of her arrest, Swiger was mumbling and uncooperative. She later became compliant, but the paramedic who treated her described her as disoriented and unable to respond to questions. Swiger was admitted to Akron General and ultimately spent close to nine days in their psychiatric unit.

{¶4} As a result of the events that occurred on August 23, 2011, a grand jury indicted Swiger on each of the following counts: (1) aggravated vehicular assault, in violation of R.C. 2903.08(A)(1); (2) operating a vehicle under the influence of drugs or alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a); (3) red light, in violation of R.C. 4511.13; (4) reckless operation, in violation of R.C. 4511.20; (5) hit skip, in violation of R.C. 4549.02; and (6) endangering children, in violation of R.C. 2919.22(A). Swiger initially pleaded not guilty on all counts, but later filed a notice that she intended to plead not guilty by reason of insanity ("NGRI") on all counts.

{¶5} With the exception of the minor misdemeanor offenses for red light and reckless operation, all of Swiger's counts were tried to a jury. Near the conclusion of the trial, the trial judge informed Swiger's counsel that she would not give the jury an NGRI instruction on either the aggravated vehicular assault count or the OVI count, as the former was a strict liability offense and the latter was both a strict liability offense and a traffic offense. Consequently, the jury only received an NGRI instruction on the counts for hit skip and child endangering. The jury found Swiger guilty on all four counts. The court then found Swiger guilty on the two minor misdemeanor counts. The court sentenced Swiger to a total of four years in prison.

{¶6} Swiger now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON A PLEA OF NOT GUILTY BY REASON OF INSANITY VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS.

{¶7}    In her first assignment of error, Swiger argues that the trial court erred by refusing to issue the jury an NGRI instruction with regard to her aggravated vehicular assault and OVI counts.  We agree.

{¶8}    While the precise language of a given jury instruction is a matter of discretion for the trial court, "[a] trial court must charge a jury with instructions that are a correct and complete statement of the law." *State v. Estright*, 9th Dist. Summit No. 24401, 2009-Ohio-5676, ¶ 46.  "A trial court does not err by refusing to issue an instruction to which a defendant, as a matter of law, is not entitled." *State v. Floyd*, 9th Dist. Summit No. 25880, 2012-Ohio-3551, ¶ 7.  The question of whether a court's instructions were correct, as a matter of law, is one that this Court reviews de novo.  *State v. Cook*, 9th Dist. Summit No. 26360, 2012-Ohio-4250, ¶ 6.  "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Baumeister*, 9th Dist. Summit No. 23805, 2008-Ohio-110, ¶ 4.

{¶9}    In *State v. Ungerer*, 87 Ohio App.3d 110 (9th Dist.1993), this Court held that a defendant was not entitled to plead NGRI to an OVI charge under R.C. 4511.19(A)(1) due to its status as a traffic offense.  Specifically, we held that an NGRI defense "is not available to a defendant charged with violating the traffic laws of this [S]tate" because Traf.R. 10(A) only recognizes the pleas of not guilty, guilty, and no contest.  *Ungerer* at 111.  *Compare* Crim.R. 11(A) (permitting pleas of not guilty, NGRI, guilty, or no contest).  There was extensive

discussion in the court below about *Ungerer's* application and whether it precluded an NGRI instruction with regard to Swiger's OVI charge. A portion of the court's rationale for denying Swiger an NGRI instruction on two of her counts was that, under *Ungerer*, she was not entitled to it. *Ungerer*, however, is distinguishable from the case at hand.

{¶10} Ungerer's sole charge was a single violation of R.C. 4511.19(A)(1). *Ungerer* at 110. Because, absent extenuating circumstances, an R.C. 4511.19(A)(1) violation is a misdemeanor, Ungerer's case arose from a citation and proceeded as a traffic case. *See id. See also* Former R.C. 4511.99(A)(1). Swiger was charged with several different offenses, including felonies, so her charges arose from a felony indictment. Traf.R. 2(A) provides that a traffic case "does not include any proceeding that results in a felony indictment." By definition, therefore, Swiger's case was not a traffic case and the Ohio Traffic Rules did not apply to her. Instead, the Ohio Rules of Criminal Procedure applied. Unlike Traf.R. 10(A), Crim.R. 11(A) specifically allows for NGRI pleas. *Ungerer's* holding, therefore, would not operate as a bar to Swiger's NGRI instruction request.

{¶11} The second basis upon which the trial court denied Swiger's request for an NGRI instruction on her aggravated vehicular assault and OVI counts was that both counts were strict liability offenses. Specifically, Swiger's OVI count only required the State to prove that she operated a vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a). Swiger's aggravated vehicular assault count only required the State to prove that, as a proximate result of her violating R.C. 4511.19(A), Swiger caused serious physical harm to another person while operating a motor vehicle. R.C. 2903.08(A)(1)(a). Because neither offense contains a mens rea element, the trial court reasoned that the insanity defense was inapplicable. *See Akron v. Peoples*, 9th Dist. Summit No. 25398, 2011-Ohio-579, ¶

10 (OVI under R.C. 4511.19(A)(1)(a) is a strict liability offense); *State v. Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053, ¶ 44 (6th Dist.) (aggravated vehicular assault under R.C. 2903.08(A)(1)(a) is a strict liability offense).

{¶12} "[A]n affirmative defense is in the nature of a 'confession and avoidance,' in which the defendant admits the elements of the crime, but seeks to prove some additional fact that absolves the defendant of guilt." *State v. Rhodes*, 63 Ohio St.3d 613, 625 (1992). Insanity is an affirmative defense that "fit[s] the confession-and-avoidance definition." *Id.* "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves * * * that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). "Proof that a person's reason, at the time of the commission of an offense, was so impaired that the person did not have the ability to refrain from doing the person's act or acts, does not constitute a defense." R.C. 2945.391.

{¶13} Prior to the General Assembly's adoption of the NGRI test set forth in R.C. 2901.01(A)(14), the Ohio Supreme Court set forth the common law test for insanity in *State v. Staten*, 18 Ohio St.2d 13 (1969). The common law insanity test was broader than the current test, as it included in its definition that a person either did not know the wrongfulness of his conduct or lacked the capacity "to conform his conduct to the requirements of law." *Staten* at paragraph one of the syllabus. Under *Staten*, a person who knew his actions to be wrong, but who nevertheless lacked the ability to conform his conduct to the requirements of the law, was insane. In promulgating R.C. 2901.01(A)(14), the General Assembly adopted a narrower definition and limited insanity to instances where, due to a mental disease or defect, a person did not know the wrongfulness of his conduct. To be sane, therefore, a person must be able to

appreciate the wrongfulness of his actions. *See* R.C. 2901.01(A)(14). "[O]ne, who does not know that his action is wrong * * *, is not a proper subject for punishment. To punish such an individual would be like inflicting punishment upon an inanimate object, such as a machine, because it had, without any intelligent human intervention, caused some damage." (Internal citation omitted.) *Staten* at 20.

{¶14} In *State v. Wilcox*, 70 Ohio St.2d 182 (1982),[1] the Ohio Supreme Court discussed at length the difference between the defenses of insanity and diminished capacity; the latter of which the Court rejected as an available defense in Ohio. As to "the critical difference between the legal concepts of mens rea and insanity," the Court recognized that "[t]he former refers to the existence in fact of a 'guilty mind'" while insanity "connotes a presumption that a particular individual lacks the capacity to possess such a state of mind." *Wilcox* at 191, quoting *Bethea v. United States*, 365 A.2d 64, 87 (D.C.App.1976). The Court further recognized that:

> [t]he determination of capacity to form an intent - to find whether or not the alleged offender intended to do, in the sense of the criminal law, what he in fact did - requires a fine tuning of an entirely different nature than that required for the admission of evidence on the general question of insanity for the determination of whether or not there should be criminal responsibility * * *. To make * * * (the insanity) determination requires no fine tuning. It is, rather, a gross evaluation that a person's conduct and mental state is so beyond the limits of accepted norms that to hold him criminally responsible would be unjust. This is a far cry from accepting testimony which purports to prove or disprove a specific intent, as distinguished from criminal responsibility.

*Wilcox* at 192, quoting *Steele v. State*, 97 Wis.2d 72, 96-97, 294 N.W.2d 2 (1980). "The insanity defense asks [jurors] to distinguish between a large group of offenders who are punishable for their acts despite their mental deficiencies, and a small class of offenders who are so mentally

---

[1] This Court has held that the Supreme Court's analysis in *Wilcox* applies to the current statutory definition of insanity. *See State v. Partin*, 9th Dist. Summit No. 19819, 2000 WL 960959, *2 (July 12, 2000).

disabled that they cannot be held accountable because they lack the minimal capacity to act voluntarily." *Wilcox* at 193. *Accord Staten* at 20.

**{¶15}** Several years after *Wilcox*, the Supreme Court gave a clear directive regarding the difference between the mens rea element of an offense and the affirmative defense of insanity. Specifically, the Court wrote that "in Ohio[,] the insanity defense operates independently of the mental element of an offense." *State v. Curry*, 45 Ohio St.3d 109, 111 (1989). The State in *Curry* had argued that insanity was not a defense to negligent vehicular homicide because insanity was only available as a defense when it negated the intent element of an offense. *Id.* In rejecting that view, the Supreme Court wrote that:

> the insanity defense is and always has been broader in scope than the posture argued by the [S]tate. While it is true that a legally insane defendant may lack the capacity to form the specific intent to commit a particular crime, criminal intent or lack thereof is not the focus of the insanity question. Rather, the insanity defense goes to the very root of our criminal justice system and is founded on the broader principle that an insane person may not be held criminally responsible for his conduct.

*Curry* at 112. Consequently, "where the [S]tate has proved every element of the crime beyond a reasonable doubt, including the mental element, the accused may present evidence that he was insane at the time of the offense and thus should not be held criminally responsible." *Id.* "Insanity may be a defense to any crime regardless of whether the particular offense requires that the defendant's conduct be purposeful, knowing, reckless, or negligent." *Id.* at syllabus. Neither *Staten*, nor *Wilcox*, nor *Curry*, however, explicitly addressed strict liability crimes.

**{¶16}** This Court has recognized that "a strict liability offense does not implicate a culpable mental state." *State v. Scott*, 9th Dist. Summit No. 24149, 2008-Ohio-6439, ¶ 6. Strict liability is imposed in circumstances:

> where the purpose of [a] statute is to protect the victim[] regardless of the mental state of the defendant; where it would be almost impossible to prove guilty

knowledge; where the defendant has the sole opportunity to guard against the forbidden conduct and ascertain the true facts; where there exists a serious and substantial harm to the public from such conduct; where the offense is one of the eight categories of offenses amenable to strict liability; and where the offense belongs to the mala prohibita class of offenses which are not inherently wrong in and of themselves unless designated as wrong by the legislature * * *.

*State v. Buehler Food Markets, Inc.*, 50 Ohio App.3d 29, 31 (9th Dist.1989). The legislative purpose behind R.C. 4511.19(A)(1) is to discourage anyone under the influence from operating a vehicle, as "[a] person under the influence of alcohol or any drug of abuse behind the wheel of a motor vehicle is [an] obvious hazard." *State v. Cleary*, 22 Ohio St.3d 198, 201 (1986), *superseded on other grounds by statute*. Consequently, the State need not prove mens rea to convict one who operates a vehicle while under the influence. *Peoples*, 2011-Ohio-579, at ¶ 10. Likewise, when an OVI violation serves as the predicate offense for a charge of aggravated vehicular assault, the State need not prove mens rea to convict an offender on the assault charge. *Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053, at ¶ 44. The question, therefore, is whether the absence of a mens rea negates the defense of insanity.

{¶17} In addition to any culpable mental state that might be specified, every criminal act requires a person's liability to be "based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing." R.C. 2901.21(A)(1). "Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts." R.C. 2901.21(D)(2). As such, an act committed during a period of unconsciousness or a blackout cannot be a criminal offense because it is not a volitional act. *Peoples* at ¶ 18. *See also* 29A Ohio Jurisprudence 3d, Criminal Law: Substantive Principles and Offenses, Section 109 (2013). The "fundamental requirement" of the defendant having committed a voluntary act or omission "is entirely separate and distinct from the element of 'culpability' which must also be

established for all non-strict liability crimes." *State v. Colon*, 9th Dist. Lorain No. 91CA005003, 1992 WL 64173, *2 (Mar. 25, 1992). *Accord State v. Ferguson*, 10th Dist. Franklin No. 07AP-999, 2008-Ohio-6677, ¶ 73 ("[W]ith strict liability, the prosecution need only prove that the offender engaged in a voluntary act or omission."). Notably, on more than one occasion, the Supreme Court has equated sanity with a person's ability to engage in a voluntary act. *See Wilcox*, 70 Ohio St.2d at 193 (insane offenders described as those "who are so mentally disabled that they cannot be held accountable because they lack the minimal capacity to act voluntarily"). *See also State v. Cooey*, 46 Ohio St.3d 20, 26 (1989), *superseded on other grounds by constitutional amendment* ("The *Wilcox* rule is based on a mistrust of the ability of psychiatry to accurately 'fine-tune' degrees of capacity among offenders who are sane—i.e., who have the minimal capacity to act voluntarily.").

{¶18} This Court has considered the appropriateness of jury instructions on involuntariness and unconsciousness with regard to a violation of R.C. 4511.19(A)(1) on two separate occasions. In *State v. Moine*, 72 Ohio App.3d 584 (9th Dist.1991), we held that the defendant was not entitled to raise the issue of involuntariness/unconsciousness because R.C. 4511.19(A)(1) is a strict liability offense. Specifically, we held that:

> [t]he act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind. A review of the statute discloses that the legislature has defined the offense in terms of the factual presence of an alcoholic influence, without reference to the offender's mental state.

(Internal citations omitted.) *Moine* at 587. Consequently, we concluded that the trial court did not err by refusing to instruct the jury on involuntariness and unconsciousness. *Id.* at 587.

{¶19} In *Akron v. Peoples*, the defendant acknowledged that her OVI charge was a strict liability offense, but argued that she should have received instructions on involuntariness and unconsciousness because both defenses related to the voluntariness of her actions. *Peoples*, 2011-Ohio-579, at ¶ 10. We ultimately concluded that the trial court did not err by refusing to instruct the jury on the two defenses. *Id.* at ¶ 11-23. We did so, however, on the basis that the defendant did not present sufficient evidence to warrant the instructions, not because the strict liability nature of the offense precluded them. *Id.* Accordingly, unlike *Moine*, *Peoples* did not treat the strict liability offense of OVI as a per se bar to an involuntariness or unconsciousness instruction.

{¶20} Several factors support the argument that the strict liability nature of an offense, standing alone, should not act as a per se bar to an NGRI instruction. As previously discussed, the insanity defense is one of confession and avoidance and "operates independently of the mental element of an offense." *Curry*, 45 Ohio St.3d at 111. The defense does not negate the mens rea element of an offense even when one exists. Instead, it excuses a defendant from criminal liability in spite of the State's proof of the defendant's guilt beyond a reasonable doubt. *Rhodes*, 63 Ohio St.3d at 625. To hold that the absence of a mens rea element eliminates the insanity defense is to create a correlative relationship between the two where none exists. The Ohio Supreme Court has written on several occasions that the insanity defense encompasses the broader principle of criminal responsibility in general. *See Curry* at 112; *Wilcox*, 70 Ohio St.2d at 192-193; *Staten*, 18 Ohio St.2d at 20. Indeed, the Court has equated punishing an insane person with "inflicting punishment upon an inanimate object," as neither could know an action was wrong. *Curry* at 112, quoting *Staten* at 20. The Court's pronouncements on the subject of

insanity tend to favor the conclusion that a defendant may argue insanity even when charged with a strict liability offense.

{¶21} That conclusion also comports with the concept of voluntariness. As previously discussed, the "fundamental requirement" of the defendant having committed a voluntary act or omission "is entirely separate and distinct from the element of 'culpability' which must also be established for all non-strict liability crimes." *Colon*, 1992 WL 64173, at *2. The law recognizes that a period of unconsciousness may relieve a defendant of criminal responsibility for any actions committed during that period, as the defendant's actions are not volitional. *See Peoples*, 2011-Ohio-579, at ¶ 18. It is difficult to understand why a person suffering from insanity should be, in the eyes of the law, any more responsible for their actions than a person suffering from unconsciousness. As the Supreme Court noted, the insane "lack the minimal capacity to act voluntarily." *Wilcox* at 193. Insanity encompasses more than just the mens rea element of an offense.

{¶22} We acknowledge that the conclusion that the strict liability nature of an offense, standing alone, should not act as a per se bar to an NGRI instruction arguably conflicts with this Court's decision in *State v. Moine*. Although *Moine* involved involuntariness/unconsciousness instructions rather than an NGRI instruction, it is difficult to divine a meaningful distinction between the two classes of instructions for purposes of our discussion. Based on this Court's implicit departure from *Moine* in *Peoples* and the foregoing analysis of the insanity defense, we must conclude that *Moine's* logic cannot control the result here. We hold that, regardless of the nature of an offense, criminal responsibility cannot be imposed upon a person who is legally insane at the time of the commission of the offense. Therefore, the trial court here erred by refusing to give an NGRI instruction on Swiger's aggravated vehicular assault and OVI counts

solely because they were strict liability offenses.  The only remaining question is whether Swiger was prejudiced by the trial court's error.  *See State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45, quoting *Azbell v. Newark Grp., Inc.*, 5th Dist. Fairfield No. 07 CA 00001, 2008-Ohio-2639, ¶ 52 ("A trial court's failure to give a proposed jury instruction is only reversible error if the defendant demonstrates * * * that the defendant was prejudiced by the court's refusal to give the proposed instruction.").  We conclude that she was.

{¶23}  The record reflects that Swiger premised her defense in this case upon the theory that she was legally insane at the time she committed all of the charged offenses.  The trial court permitted both sides to argue and present evidence on insanity to the jury throughout the trial.  Then, directly before closing arguments, the trial judge informed both sides that she had conducted additional research and, based on that research, she would not be issuing an NGRI instruction on the strict liability counts.  The court's decision eliminated Swiger's primary defense to two of her charges; namely, her aggravated vehicular assault and OVI charges.  Because the court's decision came at the end of the trial, Swiger did not have the opportunity to pursue an alternative defense on the strict liability charges.  The court's decision deprived Swiger of her right to have the jury apply the correct law to the evidence on each count and to render an independent verdict on each count.  *See State v. Brown*, 12 Ohio St.3d 147 (1984), syllabus.  We conclude that, by refusing to issue an NGRI instruction on all of Swiger's counts, the court committed reversible error.  Swiger's first assignment of error is sustained.

<u>Assignment of Error Number Two</u>

> THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL COUNSEL FAILED TO PROPERLY RESEARCH THE ISSUE OF NOT GUILTY BY REASON OF INSANITY PLEAS AS THEY RELATE TO TRAFFIC OFFENSES.

**{¶24}** In her second assignment of error, Swiger argues that she received ineffective assistance of counsel because her trial counsel failed to properly research the law applicable to NGRI pleas. Based on our resolution of Swiger's first assignment of error, her second assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### III

**{¶25}** Swiger's first assignment of error is sustained. Her second assignment of error is moot. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.