[Cite as *State v. Crawford*, 2019-Ohio-2660.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                              Court of Appeals No. L-17-1297

      Appellee                                         Trial Court No. CR0201602264

v.

Marcus Crawford                                     **DECISION AND JUDGMENT**

      Appellant                                        Decided:  June 28, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Following a jury trial, appellant, Marcus Crawford, appeals the August 4,

2017 judgment of the Lucas County Court of Common Pleas sentencing him to a

mandatory prison term of 10 years to life.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} On July 11, 2016, Crawford was indicted on one count of rape of a person less than 13 years of age in violation of R.C. 2907.02(A)(1)(b),[1] a first-degree felony. Beginning on May 8, 2017, the trial court held a jury trial, at which the following facts were adduced.

{¶ 3} On June 10, 2016, S.B., who was 11 years old, and some of her siblings were visiting their mother's house in Toledo. Their mother, stepfather, grandmother, stepgrandfather, a man called "Slurp," and Crawford were also at the house. S.B. said that she knew Crawford before June 10 and thought he was "trustworthy" and "protective of" her.

{¶ 4} Late that morning, S.B. walked to a nearby library branch by herself so that she could use a computer. She originally told the police that she walked to the library with three of her brothers, which she admitted on cross-examination was a lie that she told so that she would not get in trouble. She said that she was not allowed to walk to the library by herself and that her aunt (who was her legal guardian) would have been upset with her if she had known. She also admitted that she "always lie[s]" to avoid getting in trouble.

---

[1] Effective March 22, 2019, Ohio's criminal statutes were extensively amended by 2017 S.B. No. 201. None of the amendments are applicable to Crawford's case, however, so all of our citations to the Revised Code refer to the former versions of the statutes that are applicable to Crawford's crime.

2.

{¶ 5} S.B.'s brother, D.M., testified that Crawford left the house after S.B., claiming that "he was going to work or something." After leaving the house, Crawford went to the library.

{¶ 6} S.B. said that Crawford came to the library while she was there and sat next to her. She testified that Crawford "kept following" her around the library. The state entered into evidence surveillance video from the library's security system. The video showed Crawford entering the library, walking past the computer where S.B. was sitting, and going to another area of the library. Shortly after, he returned to the main area and sat at a computer that was not near S.B., but immediately stood up and moved to the computer next to hers. For approximately 30 minutes, Crawford and S.B. used the adjacent computers, and the video appears to show them frequently speaking and looking at each other's screens. When Crawford stood to leave, S.B. also got up. Although S.B. and Crawford left the library at the same time, she said that they "went our separate ways."

{¶ 7} While S.B. was walking, Crawford came up behind her, "snatched" and choked her, and took her down an alley near the library to a garage filled with garbage. In the garage, Crawford took off his jacket, laid it on the ground, and told S.B. to lie down. When she refused, she said that "he holded [sic] my hands, and he just kept squeezing my neck. And he was like, 'You can die right now.'" S.B. said that Crawford "tricked" her by asking her to get something and then pulling down and removing her pants and underwear. He then "put his private part in my private part." She clarified that

3.

Crawford stuck his "peanuts" into her vagina and said that it caused her to bleed and "hurted [sic] real bad." At some point during the rape, S.B. bit Crawford on his arm, but Crawford did not stop. When Crawford finished, he asked S.B. "'How do you feel to be a woman now?'" He also threatened to kill S.B.'s family if she told any of them what had happened.

{¶ 8} Following the rape, S.B. said that Crawford took her to the store and bought her chips and candy. She then returned to her mother's house, where she washed the blood out of her underwear because it was "nasty" and she did not know what else to do. She also reported the rape to her mother. She recalls telling her mother to "shut up because I didn't want Marcus to hear." D.M. testified that he heard his stepgrandfather yelling at Crawford who responded by saying "he didn't do that * * *." S.B.'s mother called her aunt, who took S.B. to the hospital for a sexual assault examination.

{¶ 9} At the hospital, S.B. was examined by Amber Showman, a sexual assault nurse examiner ("SANE"). Showman said that S.B. was laughing and smiling when Showman introduced herself, but became tearful when describing the rape. During the exam, S.B. had a "flat affect with an occasional smile * * *." According to Showman's notes in S.B.'s medical records, S.B. identified Crawford as her assailant. S.B. reported that she was leaving the library when Crawford came up behind her, choked her with his arm, took her into a garage, and told her to take off her pants. She refused, so Crawford choked her again. He then pulled down her pants, laid her down, pulled up her legs, and "put his privates in" her. Afterward, Crawford told S.B. not to tell anyone or he would

4.

hurt her mom and family. S.B. said that she ran home and told her mother. Her aunt came to her mother's house and told S.B. that she was going to the hospital. S.B. told Showman that she was scared.

{¶ 10} Showman's physical examination of S.B. showed that S.B. did not have any marks on her neck, which Showman said is typical. Although Showman did not see any visible injuries in S.B.'s vaginal area, S.B. was extremely tender to touch and was "almost crying in pain" because she was so sore, which prevented Showman from doing a thorough examination for injuries. As part of the exam, Showman took swabs of S.B.'s neck, vaginal area, and perianal area, and collected S.B.'s clothing, which she included in the rape kit that was turned over to the police.

{¶ 11} On July 14, 2016, S.B. was examined by Dr. Randall Schlievert, who testified as an expert in the treatment and diagnosis of sexual abuse. The examination consisted of an interview by a social worker and a physical examination by Schlievert. The version of events that S.B. gave during the interview was mostly consistent with the version that she told the SANE and testified to at trial. Schlievert testified that he saw a "hymenal transection" during the physical examination, which he claimed was only possible if there had been "penetrating trauma." Based on S.B.'s description of events and the tear in her hymen, Schlievert concluded that S.B. had been sexually assaulted.

{¶ 12} Detective Rebecca Kincaid of the Toledo Police Department was the detective assigned to investigate this case. As part of her investigation, Kincaid

5.

interviewed S.B., obtained the surveillance video from the library, interviewed Crawford, and collected a DNA sample from Crawford.

{¶ 13} Kincaid came to the hospital while S.B. was being treated. When the sexual assault examination was finished, Kincaid drove S.B. and her aunt to the library to have S.B. show her the garage where the rape occurred. Kincaid also interviewed S.B. Based on Kincaid's testimony, the version of events that S.B. reported to Kincaid was generally consistent with S.B.'s trial testimony, although Kincaid admitted on cross that S.B. said Crawford brought chips and soda back to her mother's house, not that Crawford took her to the store after the rape.

{¶ 14} During the interview with Crawford (a portion of which was played for the jury), Kincaid said that Crawford initially denied having sex with S.B., but changed his story after Kincaid collected his DNA. In Crawford's second version of events, he admitted that he "fucked up," but placed the blame for the incident on S.B. Crawford claimed that S.B. followed him down the alley, "tried to come on to" him, and he "let her a little bit." He admitted that his penis had been in S.B.'s vagina, but said that "I didn't fuck [a] sixth grader." Instead, he said that S.B. pulled down her pants and climbed on top of him, and he let her "put it in and then [he] pulled it out." He claimed, however, that *he* did not "put it in her."

{¶ 15} Kincaid sent Crawford's DNA sample and S.B.'s rape kit to the Ohio Bureau of Criminal Investigation ("BCI") for testing. A forensic scientist with BCI testified that she identified semen on the vaginal and perianal swabs from S.B.'s rape kit

6.

and that both samples tested presumptively positive for blood. Hallie Dreyer, a forensic scientist in BCI's DNA unit, analyzed the sample from the vaginal swab and compared the results to the DNA sample obtained from Crawford. She found that the swab contained a mixture of S.B.'s DNA and DNA that was consistent with Crawford's DNA. Dreyer estimated that the statistical likelihood of finding the DNA profile that she identified from the vaginal sample (and that was consistent with Crawford's DNA) in the general population was one in 1 trillion unrelated individuals (i.e., rarer than the entire population of the earth).

{¶ 16} On cross-examination, Dreyer admitted that she did not test the swab taken from S.B.'s neck. Because it is not feasible for BCI to test every sample from every case, Dreyer said, in rape cases, they start by testing samples that were collected internally or from an orifice—"especially an internal orifice collection"—and that had a bodily fluid identified on them. Because Dreyer found DNA in the vaginal sample, she did not test the remaining samples in the rape kit.

{¶ 17} Based on this evidence, the jury found Crawford guilty.

{¶ 18} On August 1, 2017, the trial court sentenced Crawford to a mandatory prison term of 10 years to life.

{¶ 19} Crawford now appeals, raising two assignments of error:

Assignment of Error One: The trial court violated appellant's right to a speedy trial under the Sixth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 10.

7.

Assignment of Error Two: The verdict was against the manifest weight of the evidence.

## II. Law and Analysis

### A. Crawford's Speedy-Trial Rights were not Violated

{¶ 20} In his first assignment of error, Crawford contends that his constitutional speedy-trial rights were violated. His arguments in support, however, focus on his statutory right to a speedy trial. The state counters that Crawford waived this error by not raising it in the trial court and, regardless, that he was brought to trial within the statutory timeframe.

### 1. Statutory Speedy-Trial Right

{¶ 21} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10, of the Ohio Constitution. *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). The Ohio legislature adopted the provisions of R.C. 2945.71-.73 to implement these constitutional guarantees. *Id.* Under the statutory scheme, the state is required to bring a defendant charged with a felony to trial within 270 days after his arrest. R.C. 2945.71(C)(2). If the defendant makes a prima facie showing that his speedy-trial time has elapsed, the burden shifts to the state to demonstrate that the defendant was timely brought to trial. *State v. Taylor*, 6th Dist. Lucas No. L-98-1375, 2001 Ohio App. LEXIS 4503, 5-6 (Oct. 5, 2001). If the state fails to do so, the trial court is required to dismiss the charges against the defendant. R.C. 2945.73(B).

8.

**{¶ 22}** Here, Crawford was arrested on July 21, 2016, and brought to trial on May 8, 2017—which was 291 days after his arrest. As this was more than the 270-day limit in R.C. 2945.71(C)(2), Crawford has made a prima facie showing that his speedy-trial time elapsed before trial. Thus, the burden shifts to the state to show that Crawford was timely brought to trial.

**{¶ 23}** The state argues that Crawford's case was subject to numerous tolling events that brought his trial date within the statutory limit. We agree.

### a. Relevant Events

**{¶ 24}** The following events are relevant to our speedy-trial determination:

| Date | Event |
|---|---|
| July 21, 2016 | Crawford was arrested. |
| July 27, 2016 | Crawford filed his discovery demand. |
| August 16, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on September 6, 2016, at Crawford's request. |
| September 6, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on September 20, 2016, at Crawford's request. |
| September 8, 2016 | The state filed its discovery response. |
| September 15, 2016 | Crawford was indicted on an unrelated charge. |
| September 19, 2016 | Crawford's attorney filed a motion to withdraw. |

9.

| September 20, 2016 | Crawford appeared for a pretrial at which the trial court granted counsel's motion to withdraw. The trial court appointed new counsel and rescheduled the matter for a pretrial on October 4, 2016. |
| --- | --- |
| October 4, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on November 1, 2016, at Crawford's request. |
| November 1, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on November 22, 2016, at Crawford's request. |
| November 22, 2016 | The trial court held a pretrial at which Crawford was not present and rescheduled the matter for a pretrial on November 29, 2016, at Crawford's request. |
| November 29, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on December 13, 2016, at Crawford's request. |
| December 13, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on December 20, 2016, at Crawford's request. |
| December 20, 2016 | Crawford appeared for a pretrial, and the trial court rescheduled the matter for a pretrial on January 17, 2017, at Crawford's request. |
| January 17, 2017 | Crawford appeared for a pretrial. The trial court set a jury trial for February 27, 2017. |
| January 20, 2017 | Crawford filed a motion for relief from prejudicial joinder. |
| January 30, 2017 | The state filed a notice that it did not intend to join this case and the case related to the September 15, 2016 indictment for trial. |
| February 17, 2017 | The state filed a motion to continue the jury trial. |

| February 23, 2017 | The trial court vacated the February 27 trial date and set the matter for a pretrial on February 28, 2017. |
| February 28, 2017 | Crawford appeared for a pretrial. The trial court and counsel discussed the motion for relief from joinder, but the court did not issue a ruling. The court granted the state's motion to continue and set a jury trial for March 20, 2017. |
| March 14, 2017 | Crawford appeared for a pretrial at which his attorney made an oral motion to withdraw. The trial court held the motion in abeyance and rescheduled the matter for a pretrial on March 21, 2017, at Crawford's request. |
| March 21, 2017 | Crawford appeared for a pretrial at which the trial court granted counsel's motion to withdraw. The trial court appointed new counsel, rescheduled the matter for a pretrial on April 18, 2017, and set a jury trial for May 8, 2017. |
| April 18, 2017 | Crawford appeared for a pretrial at which the May 8 trial date was confirmed. |
| May 8, 2017 | Crawford's jury trial began. |

### b. Applicable Law

{¶ 25} Under R.C. 2945.73(B), an accused is required to make a motion to dismiss based on a speedy-trial violation "at or prior to the commencement of trial * * *." If an appellant fails to do so, we review the issue only for plain error. *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 35, citing *State v. Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, ¶ 20. Because Crawford did not file a motion in the trial court, we review his speedy-trial claim for plain error. Plain error is an error that affects an appellant's substantial rights. Crim.R. 52(B). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice."

*State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 26} At its most basic, a speedy-trial calculation requires us to "'simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72.'" *State v. Vrapi*, 10th Dist. Franklin No. 11AP-700, 2012-Ohio-1018, ¶ 6, quoting *In re F.S.,* 10th Dist. Franklin No. 11AP-244, 2011-Ohio-6135, ¶ 7. When the defendant is held in custody in lieu of bail, each day he is held counts as three days for speedy-trial purposes. R.C. 2945.71(E). However, the triple-count provision of R.C. 2945.71(E) applies only when the defendant is "held in jail solely on the pending charge." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 7.

{¶ 27} The reasons for charging days to the defendant (i.e., tolling speedy-trial time) are outlined in R.C. 2945.72. The exceptions in the statute are the only reasons that speedy-trial time can be extended. *Id.* ("The time within which an accused must be brought to trial * * * may be extended *only* by the following * * *.") (Emphasis added.)). Any extension must be strictly construed against the state. *City of Toledo v. Skarlov*, 6th Dist. Lucas Nos. L-15-1303 and L-15-1304, 2017-Ohio-137, ¶ 7.

12.

**{¶ 28}** Here, several types of tolling events are relevant to our analysis.

**{¶ 29}** Under R.C. 2945.72(C), speedy-trial time is tolled during "[a]ny period of delay necessitated by the accused's lack of counsel," as long as the delay is not due to the trial court's lack of diligence in appointing counsel. *State v. Perkins*, 2d Dist. Montgomery No. 21515, 2007-Ohio-136, ¶ 9 ("Time spent without the benefit of counsel must be tolled.").

**{¶ 30}** Under R.C. 2945.72(E), when the defendant files a motion or demand for discovery, time is tolled for a "reasonable time until the motion is responded to and ruled upon." *Sanchez* at ¶ 26; *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus. We have previously recognized that a "reasonable time" for the state to respond to a discovery demand is 30 days. *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 21.

**{¶ 31}** When determining the "reasonable" tolling period incurred by a defendant's motion, a reviewing court must consider the particular circumstances of the case, the complexity of the facts and difficulty of the legal issue involved, and the time constraints on the trial court. *State v. Arrizola*, 79 Ohio App.3d 72, 76, 606 N.E.2d 1020 (3d Dist.1992) (Finding that a 228-day period between filing of motion to suppress in an OVI case and trial court's decision was unreasonable when "[n]othing appear[ed] on the record which would justify this amount of time."); *see also, e.g., State v. Ford*, 180 Ohio App.3d 636, 2009-Ohio-146, 906 N.E.2d 1155 (1st Dist.), paragraph two of the syllabus (Finding that a five-month delay was unreasonable and that, "[a]lthough a

13.

defendant's motion to sever charges tolls the speedy-trial time, the trial court cannot take an unlimited amount of time to rule on the motion; after a reasonable amount of time has passed, the defendant's speedy-trial time begins to run again."); *State v. Garrett*, 6th Dist. Erie No. E-02-015, 2003-Ohio-5185, ¶ 21 (Finding that a six-week delay in ruling on motion to sever was reasonable because the recently-appointed visiting judge needed time to familiarize himself with the case, which involved several felonies, including murder.).

{¶ 32} Under R.C. 2945.72(H), time is tolled during any continuance requested by the defendant and any reasonable continuance required by the state or the court. In addition to being "reasonable," a continuance for the benefit of the state or the court must also be "necessary." *State v. Willis*, 6th Dist. Wood Nos. WD-15-006 and WD-15-007, 2016-Ohio-616, ¶ 17, citing *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988). Whether such a continuance is reasonable and necessary depends on the facts and circumstances of the case. *Saffell* at 91. To support the reasonableness of and necessity for a continuance granted other than upon the defendant's motion, "a trial court must journalize the continuance before the expiration of the time limit set forth in R.C. 2945.71 and must state the reason for the continuance." *State v. Stamps*, 127 Ohio App.3d 219, 224, 712 N.E.2d 762 (1st Dist.1998); *State v. Hohenberger*, 189 Ohio App.3d 346, 2010-Ohio-4053, 938 N.E.2d 419, ¶ 47 (6th Dist.). If the journal entry does not contain the reason for the continuance, the reviewing court can look to other evidence in the record to determine whether the continuance was reasonable and necessary. *State*

14.

*v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 62; *Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, at ¶ 29.  Time is chargeable to the defendant as long as the record affirmatively demonstrates the reasonableness of and the necessity for the continuance.  *Myers* at ¶ 62.

{¶ 33} We will now apply these general legal principles to Crawford's case.

### c. Speedy-Trial Calculation

{¶ 34} Crawford was arrested on July 21, 2016.  Under the statutory scheme, although speedy-trial time begins to run when an accused is arrested for the offense in question, the actual day of the arrest does not count.  R.C. 2945.71(C)(2); *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, and WD-16-029, 2017-Ohio-9063, ¶ 12.

{¶ 35} Following his arrest, Crawford was held in jail in lieu of bail until his trial, which entitled him to triple speedy-trial-time credit for each day he was held.  R.C. 2945.71(E).  According to a statement that the trial court made during the February 28, 2017 pretrial, however, Crawford was indicted on a separate, unrelated case on September 15, 2016.  Because the triple-count provision of R.C. 2945.71(E) applies only when the defendant is "held in jail solely on the pending charge," *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 7, we find that Crawford was entitled to triple credit for his days in custody from July 22 to September 15, 2016, unless any tolling events occurred during that time.

**{¶ 36}** We find that there were several overlapping tolling events in this case attributed to Crawford's conduct.

**{¶ 37}** First, Crawford filed a discovery demand on July 27, 2016. The state responded to Crawford's discovery demand on September 8, 2016—43 days later. This was beyond the "reasonable" period of 30 days for the state to respond to a discovery demand. *Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, at ¶ 21. We therefore find that Crawford's discovery demand tolled speedy-trial time for 30 days, until August 26, 2016.

**{¶ 38}** Second, between August 16, 2016, and January 17, 2017, Crawford requested nine continuances and fired his attorney. Each of these events resulted in time tolling. R.C. 2945.72(C) (speedy-trial time is tolled during "[a]ny period of delay necessitated by the accused's lack of counsel * * *," as long as the delay is not due to the trial court's lack of diligence in appointing counsel); R.C. 2945.72(H) (speedy-trial time is tolled during "[t]he period of any continuance granted on the accused's own motion * * *").

**{¶ 39}** Third, on January 20, 2017, Crawford filed a motion for relief from prejudicial joinder in anticipation that the state would attempt to try this case and the case related to the September 2016 indictment together. On January 30, 2017, the state filed a notice that it did not intend to join the cases. Although the parties and the trial court discussed the motion at the pretrial on February 28, the court did not issue a ruling until May 8, 2017, the day that Crawford's trial began.

16.

{¶ 40} Crawford's motion tolled speedy-trial time for a "reasonable time" to allow the trial court to rule. *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 26. Here, considering that the issues raised in Crawford's motion were uncomplicated and the state promptly informed the court that it was not going to try the cases together, we see no reason to toll the full 108-day period from the time Crawford filed his motion to the trial court's ruling against Crawford. Instead, based on the circumstances of the case, we find that 10 days—from January 20, 2017, when Crawford filed his motion, to January 30, 2017, when the state filed notice that it would not try the cases together—was a reasonable time for the court to resolve the motion, and speedy-trial time was tolled during that period.

{¶ 41} Fourth, on March 14, 2017, Crawford requested a continuance and on March 21, 2017, his second attorney withdrew, which resulted in time tolling until the pretrial on April 18, 2017. R.C. 2945.72(C), (H).[2]

{¶ 42} No tolling events occurred from April 18 to May 8, 2016—the period between the pretrial at which the trial date was confirmed and the beginning of the trial— so these days are chargeable to the state.

---

[2] In addition to these events, the state argues that a 14-day continuance, which was granted at the prosecutor's request, also tolled the speedy-trial clock. Whether this continuance was "reasonable and necessary" is immaterial, however, because it would not affect our conclusion that Crawford was brought to trial well within 270 days of his arrest as required by R.C. 2945.71(C)(2).

17.

**{¶ 43}** In sum, we calculate Crawford's speedy-trial time as follows:

| Dates | Tolling event | Days chargeable to the state |
|---|---|---|
| July 21 to July 27, 2016 | | 18[3] |
| July 27 to August 26, 2016 | A reasonable time for the state to respond to Crawford's discovery demand | Tolled |
| August 16 to January 17, 2017 | Period during which Crawford requested nine continuances and fired his first attorney | Tolled |
| January 17 to 20, 2017 | | 3 |
| January 20 to 30, 2017 | A reasonable time for the trial court to resolve Crawford's motion for relief from prejudicial joinder | Tolled |
| January 30 to March 14, 2017 | | 43 |
| March 14 to April 18, 2017 | Period during which Crawford requested one continuance and fired his second attorney | Tolled |
| April 18 to May 8, 2017 | | 20 |
| | **Total days chargeable to the state** | **84** |

**{¶ 44}** Because the number of days chargeable to the state—84 days—is fewer than the 270 days within which the state was required to bring Crawford to trial under R.C. 2945.71(C)(2), we conclude that Crawford's statutory speedy-trial right was not violated. Accordingly, we find no plain error.

---

[3] This number includes the triple credit Crawford is entitled to under R.C. 2945.71(E).

18.

## 2. Constitutional Speedy-Trial Rights

**{¶ 45}** Although Crawford did not make any arguments related to the violation of his constitutional speedy-trial rights, he assigned violation of his constitutional rights as error. We find no error.

**{¶ 46}** To determine whether a defendant was deprived of these constitutional rights, we must balance four factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997), and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). But we must first make a threshold determination that the delay in bringing the defendant to trial was "presumptively prejudicial"; if it was not, we need not inquire into the other factors. *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 23. The Supreme Court of Ohio has recognized that a delay becomes presumptively prejudicial as it approaches one year. *Adams* at ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1. Regardless, whether the length of a delay is presumptively prejudicial is dependent upon the facts and circumstances of each case. *Hull* at ¶ 23.

**{¶ 47}** Based on our review of the record, we cannot conclude that the 291-day delay in this case was presumptively prejudicial—particularly because nearly one-half of the delay was caused by Crawford requesting numerous continuances and needing new

19.

appointed counsel. Crawford does not present any arguments to the contrary. Thus, we conclude that his constitutional rights were not violated and no plain error occurred.

{¶ 48} Crawford's first assignment of error is not well-taken.

### B. Crawford's Conviction is not Against the Weight of the Evidence

{¶ 49} In his second assignment of error, Crawford argues that his conviction is against the manifest weight of the evidence because of inconsistencies in S.B.'s testimony and her admission that she "always lie[s]" to avoid getting in trouble. We disagree.

{¶ 50} When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the prosecution. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 387. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

20.

**{¶ 51}** Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the jury's credibility determinations, given that it is the jury that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

**{¶ 52}** Crawford was convicted of rape of a person less than 13 years of age in violation of R.C. 2907.02(A)(1)(b), which prohibits a defendant from engaging in sexual conduct with another who is not the defendant's spouse if the other person is less than 13 years old. "Sexual conduct" includes "vaginal intercourse between a male and female * * *." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal * * * intercourse." *Id.*

**{¶ 53}** After reviewing the evidence and the credibility of the witnesses and weighing the conflicting testimony, we are not convinced that the evidence weighs heavily against a conviction. We cannot say that the jury lost its way or created a manifest miscarriage of justice (despite the inconsistencies in S.B.'s testimony) because the pertinent portions of S.B.'s testimony—i.e., her descriptions of Crawford engaging in vaginal intercourse with her—were supported by other evidence. Crucially, S.B. testified that Crawford inserted his penis into her vagina, which was confirmed by (1) the presence of DNA consistent with Crawford's in S.B.'s vaginal area and (2) Crawford's admission to Kincaid that his penis was in S.B.'s vagina. The inconsistencies in S.B.'s

21.

testimony had no bearing on the objective DNA evidence and Crawford's own words. In other words, the state's evidence clearly demonstrated that Crawford engaged in vaginal intercourse with S.B.—who was 11 years old at the time—which is all that was required for a conviction under R.C. 2907.02(A)(1)(b). This is true despite the inconsistencies in S.B.'s testimony.

**{¶ 54}** Accordingly, we find that Crawford's conviction is not against the manifest weight of the evidence. His second assignment of error is not well-taken.

### III. Conclusion

**{¶ 55}** Based on the foregoing, the August 4, 2017 judgment of the Lucas County Court of Common Pleas is affirmed. Crawford is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.