[Cite as *State v. Howard*, 2025-Ohio-273.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                              No. 113783

    v.                                      :

CAMERON HOWARD,                          :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** January 30, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-669225-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Cleary, Assistant Prosecuting Attorney, *for appellee.*

Law Office of Schlachet and Levy, Jaye M. Schlachet, and Eric M. Levy, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Cameron Howard ("Howard") appeals his convictions and sentence following a bench trial. Howard raises the following assignments of error for our review:

1. Howard was denied his constitutional right to effective trial counsel where counsel failed to file a written plea of not guilty by reason of insanity and the trial court otherwise committed plain error in proceeding forward with trial absent such filing.

2. The finding that Howard did not prove not guilty by reason of insanity by a preponderance of the evidence was against the manifest weight of the evidence.

3. The sentence imposed by the trial court was contrary to law when imposed as an indefinite sentence and, if an indefinite sentence were proper, when the mandatory indefinite sentence advisements were not read to Howard at the time of sentencing.

{¶ 2} After a careful review of the facts and applicable case law, we affirm Howard's convictions. However, because the trial court did not properly advise Howard under the Reagan Tokes Law, we remand for the limited purpose of providing him with the notifications required under R.C. 2929.19(B)(2)(c).

## I. Factual and Procedural History

{¶ 3} The underlying facts of this matter are largely not in dispute. On March 30, 2022, Howard was staying at an extended-stay hotel in the Village of Orange. Hotel management had called the police asking for assistance in removing Howard because he had been disrespectful to staff.

{¶ 4} Officers from the Orange Village Police Department arrived at the hotel and knocked on the door of the room in which Howard had been staying. Howard opened the door, saw the officers, and tried to close the door, but Ofc. Michael Debeljak ("Debeljak") prevented him from doing so.

{¶ 5} Debeljak entered the hotel room along with his partner Ofc. Mark Ramsey ("Ramsey"). Howard was concealing his right hand from view, and

Debeljak asked if Howard had any weapons. Howard seemed agitated and took an aggressive stance.

{¶ 6} Debeljak tried to explain to Howard that he was being evicted from the hotel. Howard told him to leave so he could pack his things. Each officer tried to deescalate the situation, but Howard became more agitated.

{¶ 7} At one point, Debeljak turned his head to see where his partner was standing, and Howard struck Debeljak in the face. Howard continued to strike Debeljak and told him that he was going to kill him.

{¶ 8} Debeljak was able to grab Howard's left hand and attempt to get cuffs on Debeljak with his other hand. Howard then stabbed Debeljak multiple times with a knife that he had in his right hand. Ramsey tased Howard, but it had no effect. The officers called for assistance.

{¶ 9} Lt. Michael Roberts ("Roberts") arrived on scene and noticed that Debeljak was bleeding profusely. He drew his firearm and told Howard to drop the knife. Howard did so and was then handcuffed. Debeljak had been stabbed ten times, including in his neck, chest, face, skull, and hand.

{¶ 10} Howard was charged with attempted aggravated murder, attempted murder, and two counts of felonious assault of a peace officer.

{¶ 11} The matter proceeded to a bench trial, where the State presented the testimony of Ofc. Debeljak, Lt. Roberts, and Sgt. Joyce Sherwood, who helped process the crime scene and testified about an additional recent incident where the police had been called to another hotel where Howard had been staying.

Additionally, Ofc. Josh Woodrich testified he sat with Howard at the hospital following the incident and escorted him to a mental-health facility after he was discharged from the hospital and returned him to Orange Village the following day.

{¶ 12} Howard presented the testimony of his mother and forensic psychologist Dr. Bob Stinson. Howard had raised the affirmative defense of not guilty by reason of insanity ("NGRI") and presented the testimony of Dr. Stinson, who testified regarding the NGRI elements and his expert report. He stated that Howard suffered from a severe mental disease and did not know the wrongfulness of his actions.

{¶ 13} The State then presented a rebuttal witness, Dr. Susan Hatter-Friedman, who testified that Howard did understand the wrongfulness of his actions and offered her own expert report. She testified that Howard had schizophrenia, a severe mental disease. She outlined for the court how she came to conclude that Howard's schizophrenia did not cause him to not know the wrongfulness of his actions.

{¶ 14} The court found Howard guilty of all charges. In rendering its verdict, the court found that, at the time of the incident, Howard did suffer from a mental disease or defect. The court acknowledged, however, that the actual question in this matter was whether the severe mental disease or defect caused Howard to not know the wrongfulness of his actions.

{¶ 15} The court further noted that testimony had been presented at trial by two conflicting experts who were both "highly qualified, experienced, and well

respected in their fields." The court stated that it was highly persuaded by the State's expert and her conclusion that Howard knew of the wrongfulness of his actions. The court ultimately determined that Howard had not met his burden in proving his NGRI defense and that the State had proven beyond a reasonable doubt that Howard was guilty of all four counts charged.

{¶ 16} At sentencing, Counts 2, 3, and 4 merged into Count 1, and the State elected to proceed on Count 1. Howard was sentenced to seven to ten and one-half years in prison.

{¶ 17} Howard then filed the instant appeal.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶ 18} In his first assignment of error, Howard argues that his trial counsel was ineffective because he had failed to file a written NGRI plea prior to the commencement of trial. He contends that the trial court committed plain error by proceeding with trial without first requiring a written NGRI plea.

{¶ 19} In order to establish a claim of ineffective assistance of counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989); and *State v. Reed*, 74 Ohio St.3d 534 (1996).

{¶ 20} Howard correctly notes that under R.C. 2943.03 and Crim.R. 11, a plea of NGRI is required to be in writing and must be made at time of the

arraignment unless good cause is shown for such a plea to be entered any time before trial. Howard asserts in his brief that "[t]he failure to file [a written plea of NGRI] meant that the defense was unavailable to Howard to be properly decided by a trier of fact."

{¶ 21} While it is inarguable that the proper procedural steps were not followed in this case, the defense of NGRI was quite obviously "available" to Howard. It was considered, and ultimately rejected, by the trier of fact. In fact, the issue of whether Howard was not guilty by reason of insanity was largely the only issue to be decided by the court in this matter.

{¶ 22} Howard cannot show that he was prejudiced by his counsel's failure to file a written plea. He was still able to assert the NGRI defense, and the same was properly considered by the trial court.

{¶ 23} Moreover, we cannot find that the trial court plainly erred in considering evidence and making a finding regarding NGRI. It does appear from the transcript that the State believed that a written NGRI plea had been filed, and the State did not raise any objections related to the assertion of the defense.

{¶ 24} Howard cannot demonstrate that his trial counsel's performance was deficient for failing to file a written plea of NGRI, and we cannot find any prejudice to Howard resulting therefrom or that the trial court plainly erred in considering the defense. Howard's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 25} In his second assignment of error, Howard contends that the court's finding that he did not demonstrate by a preponderance of the evidence that he was not guilty by reason of insanity was against the manifest weight of the evidence.

{¶ 26} When reviewing a manifest weight challenge, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 2022-Ohio-1397, ¶ 54 (8th Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *Martin* at 175.

{¶ 27} R.C. 2901.01(A)(14) provides the definition for the legal insanity standard:

> A person is "not guilty by reason of insanity" relative to a charge of an offense only if the person proves, [by a preponderance of the evidence], that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts.

{¶ 28} The State is not required to prove the defendant's sanity as an element of the offense. *State v. Hancock*, 2006-Ohio-160, ¶ 35. To the contrary, the NGRI defense is an affirmative defense. *State v. Taylor*, 2002-Ohio-7017, ¶ 64. "[T]he

burden of proof, by a preponderance of the evidence, for an affirmative defense . . . is upon the accused." R.C. 2901.05(A). The accused must persuade the trier of fact that "at the time of the commission of the offense, the [accused] did not know, as a result of a severe mental disease or defect, the wrongfulness of [his or her] acts." R.C. 2901.01(A)(14).

{¶ 29} Howard contends that the court's determination that he had not met his burden of proof regarding the NGRI defense was against the manifest weight of the evidence because the trial court did not consider whether Howard had the ability to refrain from engaging in his criminal actions, even if he had known they were wrong. Howard argues that the evidence overwhelmingly showed that he did not. Howard asserts that at the time the police were attempting to get him to leave the hotel, he believed the police were stalking him and were plotting to kill him; he therefore could not control his instinct to protect himself.

{¶ 30} In rendering its verdict, the trial court noted that it had been presented with conflicting testimony of two highly qualified experts who performed extensive investigations in forming their opinions. When "expert witnesses differ in their opinions regarding the insanity defense, the trier of fact must make a credibility determination when deciding which experts to believe." *State v. Sanders*, 2022-Ohio-2261, ¶ 71 (8th Dist.), citing *State v. Murphy*, 2016-Ohio-1165, ¶ 39 (4th Dist.).

{¶ 31} The trial court was ultimately persuaded by the evidence presented by the State's expert, Dr. Hatters-Friedman, explaining:

Specifically on page 20, subsection 2 [of her expert report], she noted that he understood that he had been asked to leave the hotel as he had been asked to leave the other hotel in the recent past.

When he had been angry about leaving the previous hotel, he had thrown coffee at the hotel staff, and had departed before the police arrived indicating knowledge that he should not overstay at hotels or assault others. He was aware that the police were asking him to leave the hotel as the hotel staff had.

Doctor Hatters-Friedman noted that this documented "disdain for authority," continued during his time at Northcoast Behavioral Health Care even after he had been treated for his mental illness on page 13 of her report.

In subsection (3) on page 20 she wrote that he concealed his weapon and surprised the officers in the attack. He had been asked several times if there were weapons in the room, and had refused to answer indicating his knowledge of wrongfulness.

In support of this conclusion, Dr. Hatters-Friedman testified on the date in question Mr. Howard ignored the requests to comply when there were two officers in the room but was able to comply when confronted by more officers in the hotel room.

She explained that an individual suffering under the effects of a psychosis or delusion does not change their behavior, or that delusion does not stop without antipsychotic medication. Yet, in this case, Mr. Howard was able to surrender and change his presentation when more officers came into the room.

. . .

{¶ 32} This court has previously addressed the issue of two conflicting expert witnesses in *Sanders*. The *Sanders* Court noted that appellate courts have consistently declined to second-guess the interpretation of the evidence by the trier of fact in NGRI cases, explaining that

the Supreme Court of Ohio has held that "[t]he weight to be given the evidence and the credibility of the witnesses concerning the

establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. If the record demonstrates that the trier of fact considered the insanity defense, the reviewing court should defer to the trier of fact's interpretation of the evidence. *See State v. Curry*, 45 Ohio St.3d 109, 114, 543 N.E.2d 1228 (1989). "'Indeed, a trial court's judgment as to the defense of insanity will be reversed only where overwhelming and uncontradicted evidence to the contrary is arbitrarily ignored.'" *Murphy* at ¶ 39, quoting *State v. Duncan*, 9th Dist. Medina No. 3117-M, 2001 Ohio App. LEXIS 4022, 22-23 (Sept. 12, 2001), citing *State v. Brown*, 5 Ohio St.3d 133, 136, 5 Ohio B. 266, 449 N.E.2d 449 (1983); *accord State v. Sudberry*, 12th Dist. Butler No. CA2000-11-218, 2001 Ohio App. LEXIS 5093 (Nov. 13, 2001).

*Id.*

{¶ 33} Howard argues that evidence demonstrating that he was unable to refrain from acting in the way he did even if he knew his actions were wrong was "arbitrarily ignored." He maintains that the court improperly failed to consider that he was unable to refrain from taking these wrongful actions. In support of this assertion, Howard cites *State v. Staten*, 18 Ohio St.2d 13 (1969), which provided the common law test for insanity. "Under *Staten*, a person who knew his actions to be wrong, but who nevertheless lacked the ability to conform his conduct to the requirements of the law, was insane." *State v. Swiger*, 2013-Ohio-3519, ¶ 13 (9th Dist.).

{¶ 34} However, *Staten* was superseded by R.C. 2901.01(A)(14), where the General Assembly narrowed the definition and limited insanity to instances where a person did not know the wrongfulness of his or her conduct as a result of having a mental disease or defect.

{¶ 35} Accordingly, the trial court properly considered Howard's defense in accordance with R.C. 2901.01(A)(14) and was not required to consider whether Howard lacked the ability to refrain from committing the wrongful actions. Howard has therefore not demonstrated that there was any overwhelming and uncontradicted evidence that was arbitrarily ignored.

{¶ 36} Based upon the foregoing, we are unable to conclude that the trial court lost its way when it determined that Howard had failed to overcome the presumption of his sanity by a preponderance of the evidence. His convictions were not against the manifest weight of the evidence, and his second assignment of error is overruled.

## C. Sentencing

{¶ 37} In his final assignment of error, Howard argues that the indefinite sentence imposed by the court was contrary to law and, even if it was proper, the court did not provide him with the mandatory indefinite sentence advisements.

{¶ 38} Howard asserts that he was found guilty and sentenced for attempted aggravated murder of a peace officer under R.C. 2903.01(E)(2) along with the attempt statute, R.C. 2923.02.

{¶ 39} R.C. 2903.01(E)(2) provides that "[n]o person shall purposely cause the death of a law enforcement officer whom the offender knows or has reasonable cause to know is a law enforcement officer when . . . [i]t is the offender's specific purpose to kill a law enforcement officer." The statute provides that anyone

violating this statute is guilty of aggravated murder and shall be punished as provided in R.C. 2929.02.

{¶ 40} However, the attempt statute also applies to determine the proper sentence. Division (E)(4) of the attempt statute provides that "[i]f a person is convicted of or found guilty of an attempt to commit aggravated murder of the type described in division (E) or (F) of section 2903.01 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."

{¶ 41} Accordingly, in this case, the court was required to impose a mandatory prison term as set forth in R.C. 2929.14. Under this statute, a court imposing a prison term for a felony of the first degree that was committed on or after March 22, 2019, shall impose "an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code . . . . " R.C. 2929.14(A)(1)(a).

{¶ 42} Thus, the court properly sentenced Howard under the statute. Howard was sentenced to a minimum prison term of seven years and a maximum prison term of 50% more than the minimum — in this case, ten and one-half years. We find no merit to Howard's argument that the trial court sentenced him to an improper prison term.

{¶ 43} Howard further contends that he was not provided the proper advisements for a sentence under the Reagan Tokes Law. Specifically, Howard

argues that the trial court failed to advise him as to what conduct and determinations were necessary to extend his sentence and also did not inform him of the fact that the determination of whether to extend his sentence beyond the minimum term imposed would be made by the Ohio Department of Rehabilitation and Correction.

{¶ 44} When a trial court imposes a non-life felony indefinite sentence pursuant to the Reagan Tokes Law, R.C. 2929.19(B)(2)(c) requires that the court notify the offender of the following advisements:

> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

> (ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

> (iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

> (iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 45} The trial court must provide these notices at the time of sentencing. *State v. Gates*, 2022-Ohio-1666, ¶ 25 (8th Dist.). "A trial court is not required to use the precise wording of the statute but must convey the information required by these notice provisions." *State v. Bradley*, 2022-Ohio-2954, ¶ 13 (8th Dist.).

{¶ 46} A review of the sentencing hearing transcript demonstrates that the trial court did not notify Howard of all the required advisements under R.C. 2929.19(B)(2)(c). The State concedes that the trial court did not use the precise statutory wording but maintains that it did impart the proper information to Howard. We disagree. With regard to the indefinite sentence imposed, the court only stated as follows:

> Now, once you finish that mandatory seven years it's presumed that you will be released unless you are again denied release for bad conduct. If you are not released when your minimum term ends, you will serve an additional specified period of time and be given a new release date. You will be released on that date unless you are again denied release for bad conduct. This process will repeat until you are either released or until you finish your maximum term of 10 ½ years in prison.

{¶ 47} This court has held that a failure to fully notify an offender of the Reagan Tokes statutory advisements does not undermine the conviction. *State v. Laws*, 2023-Ohio-77, ¶ 23 (8th Dist.). Absent the full statutory advisements, the proper remedy is to remand the case for the limited purpose of providing the offender with the required R.C. 2929.19(B)(2)(c) notifications. *State v. Gates*, 2022-

Ohio-1666 ¶ 27 (8th Dist.).  Thus, we sustain the portion of Howard's third assignment of error that relates to the statutory advisements and remand this matter for the trial court to provide him with the required notifications.

{¶ 48} Judgment affirmed and case remanded to the trial court for the limited purpose of providing Howard with each of the notifications required by R.C. 2929.19(B)(2)(c).

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence and for the limited purpose of providing each of the notifications required by R.C. 2929.19(B)(2)(c).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR