[Cite as *State v. Lawrence*, 2026-Ohio-1195.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115383 |
| v. | : | |
| TAZE LAWRENCE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 2, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696636-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Amanda M. Bizub, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Taze Lawrence ("Lawrence") appeals from the journal entry sentencing him to imprisonment for an aggravated-murder conviction and an aggravated-robbery conviction. After a thorough review of the facts and the law, we affirm.

## I. Procedural History

{¶ 2} On April 23, 2023, Lawrence was one of two defendants named in a 12-count indictment concerning the shooting death of Maurice Bryant. Lawrence was named in all 12 counts, each of which included firearm specifications. Pertinent to this appeal, Lawrence was charged with Count 3, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B); and Count 4, aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1). Alleged in both counts were one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A), respectively. Lawrence initially pled not guilty to the charges against him, and the case was set for trial.

{¶ 3} On June 2, 2025, after voir dire began, the court was informed that Lawrence wished to withdraw his not-guilty plea. On the record, the State and counsel for Lawrence explained that they had reached a plea agreement. Lawrence would plead guilty to Counts 3 and 4 and to the three-year firearm specifications associated with each of those counts. The State would dismiss the one-year firearm specifications associated with Counts 3 and 4, along with all other counts and firearm specifications.

{¶ 4} The court then held a plea hearing, at which it advised Lawrence of constitutional rights he was waiving by entering a guilty plea, along with nonconstitutional rights impacted by his change of plea. At one point, the court asked Lawrence, "Do you understand the potential consequences of the unclassified felony and the F1, which I'll go through those now." The court explained the

potential terms of incarceration that it could impose upon Lawrence if he pled guilty to an unclassified felony and a first-degree felony. The court did not cover potential fines related to an unclassified felony. As to a first-degree felony, the court stated, "A felony of the 1st degree is a potential for . . . a fine up to $25,000." At the end of this discussion, following an explanation of parole and postrelease control, the court asked Lawrence, "Do you understand all of that?" Lawrence replied, "Yes, sir."

{¶ 5} The State then asked, "Did you discuss fines, Judge?" A brief on-the-record conversation ensued between the court and the lawyers about the fines for which Lawrence was eligible, after which the court stated, "So you have the fine on the unclassified felony up to 20,000. Do you have any questions about the potential consequences?" Lawrence replied, "No sir." Lawrence then pled guilty to the agreed-upon charges.

{¶ 6} On July 8, 2025, the court held a sentencing hearing. On Count 3, the court sentenced Lawrence to life imprisonment with the possibility of parole after 30 years and to a three-year prison term for the firearm specification. On Count 4, the court sentenced Lawrence to a minimum prison term of 11 years, to be served concurrently to Count 3. The court also sentenced Lawrence to a three-year prison term for the firearm specification associated with Count 4. The court established that the firearm specifications on Counts 3 and 4 were to be served consecutively to one another and to Lawrence's life sentence, announcing an aggregate sentence of life imprisonment with the possibility of parole after 36 years.

**{¶ 7}** Subsequently, the State said, "I believe he still needs a Reagan Tokes advisement on Count 4," to which the court responded:

> So 11 years plus three year firearm specification is 14 years to 19 and a half years, is the Reagan Tokes for Count 4. And because your other term is a life sentence, the chance for the early presumption of release is not possible.

**{¶ 8}** Lawrence appeals, raising the following assignments of error:

> 1. The trial court erred by accepting Appellant's plea without informing him of the statutory fine, in violation of Crim.R. 11(C)(2)(a) and due process.

> 2. The trial court erred by failing to advise Appellant of the presumption of release at the minimum term, the Department of Rehabilitation and Correction's authority to rebut that presumption, and that he must be released at or before the maximum term of his indefinite sentence, in violation of R.C. 2929.19(B)(2)(c), R.C. 2967.271, and Due Process.

## II. Law and Analysis

### A. Assignment of Error No. 1 — Advisement at the Plea Hearing Regarding the Potential Imposition of Fines

**{¶ 9}** With his first assignment of error, Lawrence asserts that the trial court erred by accepting his guilty plea without informing him of "the maximum penalty involved," as required under Crim.R. 11(C)(2)(a). Lawrence argues that the court failed to alert him of the potential fines associated with the offenses to which he pled guilty. We find no reversible error.

**{¶ 10}** "Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *State v. Dangler*, 2020-Ohio-2765, ¶ 11. The rule requires "'the trial court to personally inform the defendant of his rights and the

consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

{¶ 11} Crim. R. 11(C)(2) provides that a court shall not accept a guilty plea without first:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 12} "[T]rial courts need not recite Crim.R. 11(C) verbatim . . . . 'Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to th[e] defendant.'" *State v. Grayer*, 2019-Ohio-3511, ¶ 12 (8th Dist.), quoting *State v. Ballard*, 66 Ohio St.2d 473, 479 (1981). "[W]hen a trial court fails to fully cover . . . 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, quoting *State v. Veney*, 2008-Ohio-5200, ¶ 17; *accord State v. Davner*, 2017-Ohio-8862, ¶ 42 (8th Dist.) ("If the trial court partially complied" with nonconstitutional aspects of Crim.R. 11(C)(2), "the plea is properly

vacated only if the defendant demonstrates prejudice."). The test for prejudice is "'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). An "exception to the prejudice requirement" applies in the event of "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C)," which "eliminates the defendant's burden to show prejudice." (Emphasis in original.) *Dangler* at ¶ 15.

{¶ 13} We acknowledge that a court's obligation to advise a defendant during a Crim.R. 11 colloquy "include[s] the mention of any particular fines and costs associated with a guilty plea, so that a defendant may properly be advised of the maximum penalty involved in pleading guilty." *State v. Flagg*, 2010-Ohio-4247, ¶ 33 (8th Dist.), citing *State v. Johnson*, 2009-Ohio-2268 (8th Dist.).[1] Where a court fails to inform a defendant of possible fines, if the court "never imposed a fine at sentencing . . . [defendant] cannot demonstrate that he was prejudiced by pleading guilty." *Id.* at ¶ 33. *See State v. Combs*, 2014-Ohio-497, ¶ 18 (8th Dist.), quoting *State v. Simmons*, 2013-Ohio-5026, ¶ 7 (8th Dist.) ("'With respect to the trial court's omission to notify [defendant] of the possible fines and court costs, because the trial court never actually imposed the fines or court costs, [defendant] cannot show that he would not have entered the plea.'").

---

[1] A defendant's right to be advised of the maximum penalty during a plea hearing is not a constitutional right. *State v. Malenda*, 2017-Ohio-5574, ¶ 5 (8th Dist.), citing *State v. Clark*, 2008-Ohio-3748, ¶ 31. As such, a showing of prejudice is required to vacate a plea unless there was a complete failure to advise.

{¶ 14} In this case, the court made Lawrence aware at the plea hearing that he was eligible for fines for each offense to which he pled guilty. The court appears to have misstated which fine applied to which offense. *See* R.C. 2929.18(A)(3)(a) (limiting a fine imposed upon conviction for a first-degree felony to "not more than twenty thousand dollars"). *See also* R.C. 2929.02 (identifying penalties for aggravated murder, including a fine "fixed by the court, but not more than twenty-five thousand dollars"). Notwithstanding the court's error in identifying which offense carried which potential fine, Lawrence has not demonstrated that he did not understand the consequences of his guilty plea or that he did not plead guilty voluntarily. Moreover, the court did not impose any fines on Lawrence. Consequently, Lawrence has not demonstrated prejudice stemming from his plea colloquy.

{¶ 15} Accordingly, assignment of error No. 1 is overruled.

## B. Assignment of Error No. 2 — Advisement as to the Reagan Tokes Law During the Sentencing Hearing, Under R.C. 2929.19(B)(2)(c)

{¶ 16} With his second assignment of error, Lawrence asserts that, during his sentencing hearing, the court violated R.C. 2929.19(B)(2) by failing to notify him of certain information concerning the Reagan Tokes Law. On this basis, Lawrence asks us to "vacate and remand the indefinite portion of the sentence and require resentencing with full compliance." We decline to do so, finding no plain error.

{¶ 17} As an initial matter, to the extent that Lawrence seeks a remedy other than in-court advisements concerning R.C. 2929.19(B)(2)(c), we note that "a failure

to fully notify an offender of the Reagan Tokes statutory advisements does not undermine the conviction."  *State v. Howard*, 2025-Ohio-273, ¶ 47 (8th Dist.), citing *State v. Laws*, 2023-Ohio-77, ¶ 23 (8th Dist.).  R.C. 2929.19(B)(2) imposes notification requirements on a sentencing court "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required."  Among these requirements are notifications set forth in R.C. 2929.19(B)(2)(c) regarding the Reagan Tokes Law.[2]  R.C. 2929.19(B)(2)(c) establishes that, if a "prison term is a non-life felony indefinite prison term,"[3] the court shall "notify the offender of all of the following:"  that it is rebuttably presumed that the offender will be released on expiration of the minimum prison term; that the department of rehabilitation and correction may rebut that presumption upon making certain determinations at a hearing; that, upon making such determinations, the department may maintain the offender's incarceration; that the department may make hearing determinations and maintain an offender's incarceration more than once; and that an offender must be released upon expiration of the offender's maximum prison term.

---

[2] R.C. 2929.144(A)(1), the Reagan Tokes Law, requires that when an offender is sentenced for a felony of the first or second degree — here, aggravated robbery — the maximum prison term shall be equal to the minimum term imposed under R.C. 2929.14(A)(1)(a) "plus fifty per cent of that term."

[3] *See* R.C. 2929.14(A)(1)(a) and 2929.144(B)(1) (setting forth a range of nonlife indefinite-prison terms that may be imposed upon conviction for a first-degree felony, such as aggravated robbery).

{¶ 18} During Lawrence's sentencing hearing, the court did not give Lawrence the statutory notifications. However, Lawrence, who was represented by counsel, raised no objection at the hearing on that basis. Consequently, we review for plain error. *See State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting Crim.R. 52(B). ("Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court."). To prevail under a plain-error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial court proceeding would have been different. *Id.* at ¶ 22-23. Even then, an appellate court corrects a plain error only to prevent a manifest miscarriage of justice. *Id.* at ¶ 23.

{¶ 19} This court has found that a criminal defendant "fail[ed] to demonstrate that a substantial right was affected" to support a plain-error finding "when the . . . court failed to provide Reagan Tokes advisements" but "did not impose a Reagan Tokes tail to [defendant's] sentence." *State v. Thompson*, 2024-Ohio-5910, ¶ 13 (8th Dist.). The defendant in *Thompson* was indicted on two counts of second-degree felonious assault, to which the Reagan Tokes Law applies, and one count of having weapons while under disability. From these charges, the parties "agreed to a sentencing range of five to ten years" in prison. *Id.* at ¶ 2. The court sentenced Thompson to ten years, "made no mention of the Reagan Tokes tail, and did not impose an indefinite sentence." *Id. But see State v. Guzman*, 2022-Ohio-2414, ¶ 10 (8th Dist.), quoting *State v. Gates*, 2022-Ohio-1666, ¶ 25 (8th Dist.)

(remanding "'for the sole purpose of providing [defendant] with the notifications required by R.C. 2929.19(B)(2)(c)'" where defendant had been sentenced to a 24-28.5 year aggregate prison term).

{¶ 20} We do not find that, by failing to notify Lawrence of all of the information in R.C. 2929.19(B)(2)(c), the court affected the outcome of the proceeding or committed a manifest miscarriage of justice. As in *Thompson*, Lawrence will never become eligible for early release, nor will he be at risk of serving any additional time under the Reagan Tokes tail, despite having pled guilty to a felony to which the Reagan Tokes Law applies. The court imposed Lawrence's aggravated-robbery sentence to run concurrently to his sentence for aggravated murder. Any prison term imposed upon Lawrence for aggravated robbery will expire before the end of his sentence for aggravated murder. Lawrence will first become eligible for parole after 36 years of incarceration, long after the conclusion of his concurrently-run aggravated-robbery sentence, for which Lawrence could serve at most 16.5 years in prison. Consequently, unlike in *Guzman*, the R.C. 2929.19(B)(2)(c) advisements were of no consequence to Lawrence.

{¶ 21} While the court failed to notify Lawrence of all of the information in R.C. 2929.19(B)(2)(c), the court accurately summarized Lawrence's eligibility for the early release procedures described therein, stating: "And because your other term is a life sentence, the chance for the early presumption of release is not possible." Given the foregoing, we do not find that the court affected the outcome of the sentencing hearing or created a manifest miscarriage of justice by failing to

give Lawrence all of the Reagan Tokes Law advisements, including the explanation of the early release procedures and potential imposition of additional time, neither of which he can become eligible for.

{¶ 22} Similar to this case in which the court's error during a sentencing hearing had no impact on the defendant, this court has overruled assignments of error concerning a trial court's failure to make consecutive-sentencing findings at a sentencing hearing where "appellant has been sentenced to death or a prison term of life without the possibility of parole and does not challenge his conviction or that portion of his sentence for that conviction on appeal." *State v. Peters*, 2019-Ohio-4461, ¶ 34 (8th Dist.). *See State v. Campbell*, 2016-Ohio-7613, ¶ 11 (8th Dist.) (finding to be moot an assignment of error regarding a consecutive-sentencing order because upon the completion of defendant's life sentence, that is, his death, "the sentences that were ordered to be served consecutive to the life sentence will terminate"). In *Campbell*, this court noted that it could "issue no decision that will have any practical [e]ffect on the controversy." *Campbell* at ¶ 7, citing *State ex rel. Cincinnati Enquirer v. Hunter*, 2014-Ohio-5457, ¶ 4.

{¶ 23} Here, Lawrence's aggravated-robbery sentence will terminate before Lawrence could become eligible for release, given his lengthier concurrent sentence for aggravated murder. Under these circumstances, the early release procedures and Reagan Tokes tail described in R.C. 2929.19(B)(2)(c) will have no real-world consequences for Lawrence. We acknowledge that Lawrence will serve his aggravated-robbery sentence, unlike a prison term run consecutively to a death

sentence or sentence of life imprisonment. Still, our past decisions concerning those issues, involving errors at a sentencing hearing that can never impact a defendant, comport with our conclusion here that Lawrence has not demonstrated a manifest miscarriage of justice.

{¶ 24} Accordingly, assignment of error No. 2 is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR